LUCAS BRADLEY and CHANCELLOR CUTLER,
Plaintiffs in Error,

*vs.*

MILO C. DENTON, Defendant in Error.

ERROR TO THE RACINE CIRCUIT COURT.

Upon a contract for the bringing of three cargoes of lumber from Manitowoc to Racine, at a stipulated price, conditioned that the plaintiff should bring one cargo at the agreed price, and on his return would decide whether or not he would bring the remainder, it was *held:* that upon such a contract the plaintiff was not bound to bring more than the one load, and that the defendants were not bound to furnish the other two loads to be carried; or in other words, that the defendants were not bound to furnish more freight than the plaintiff was bound to carry.

Upon a contract to furnish three cargoes of freight at a distant port, if the vessel owner and master pursues his voyage, but the freighter has no freight at the designated port, he is not bound to go to another port in search of freight, but is bound to seek for freight at the port designated, and obtain it if possible, and if after such endeavor he is compelled to return empty, the rule of damages is, the contract price.

But if upon completion of the first voyage, the owner or master is informed there is no more freight at the designated port of lading, he has no right to undertake a second voyage for the purpose of enhancing the damages.

When a contract is violated the right of action is complete, and the party violating is responsible for all those damages which are the direct and immediate consequences.

Remote and speculative damages, though susceptible of proof, and traceable to the non-performance, are not allowed, but the injured party is bound to use reasonable exertion and diligence to protect himself from less.

This suit was brought on a contract of affreightment, by declaration served and filed, by Denton, plaintiff below, against Bradley and Cutler, defendants below. For that whereas at, &c., the said defendants made a certain verbal contract or agreement in consideration that the said plaintiff, then master and owner of the schooner Dolphin, a vessel naviga-

June Term
1854.

Bradley &
Cutler
vs.
Denton.

ting the waters of lake Michigan, and employed in the business of carrying lumber on said lake, would carry in said schooner, during the summer season of of the year one thousand eight hundred and fifty-one, for the said defendants, from the port of Manitowoc, in the State of Wisconsin, to the port of Racine in the State aforesaid, three cargoes of pine lumber, to consist of boards, scantling, joist, siding and board lath, and deliver the same to the said defendants in the port of Racine aforesaid, they the said defendants promised and agreed to furnish and provide for said plaintiff at the port of Manitowoc aforesaid, within the time aforesaid, the lumber aforesaid, in three cargoes each, as soon as the said plaintiff with the said vessel could convey the same from the port of Manitowoc to the port of Racine, and to pay the said plaintiff for carrying the said lumber, the sum of fourteen shillings for each thousand feet of said lumber whenever the said defendants should be requested.

The plaintiff avers that under the said contract or agreement, he sailed to Manitowoc in the month of July, with said schooner, and took from said port one cargo of said lumber amounting to 67,460 feet, to the port of Racine, to the defendants, who received and accepted the same. That soon after, on the 23d day of July, plaintiff sailed to Manitowoc in said vessel for a second cargo of lumber, under said contract, or agreement, but said defendants refused and neglected to furnish said lumber to the plaintiff for the purpose aforesaid at said port of Manitowoc for said second cargo.

The plaintiff also avers that said defendants have in like manner neglected and refused without reasonable excuse, to furnish and provide for said plaintiff

the third cargo of lumber under the said contract or agreement, although often requested. That he has been at all times ready and willing to carry the said cargoes of lumber according to the terms of the said contract or agreement, but that the defendants have hitherto neglected and refused to furnish him the two last cargoes, or to pay him for conveying the three cargoes aforesaid, or any of them. And that a cargo of lumber in said vessel is 60,000 feet: That the defendants are partners doing business under the style of Bradley & Cutler.

By reason whereof, &c., an action hath accrued to the plaintiff, to have and recover of the defendants the sum of fourteen shillings per thousand feet of lumber of the three cargoes aforesaid, to wit: &c.

The defendants pleaded the general issue with notice of set off. On the trial below, the plaintiff introduced a witness to prove, and by her did prove the contract substantially as alleged in the declaration. Other witnesses were produced and sworn on the part of the plaintiff, and depositions were produced, by which it appeared, that the plaintiff brought one cargo of some 67,000 feet of lumber from Manitowoc to Racine, and that he then hauled out his vessel for repairs. That on his return from his first trip, the defendant Bradley informed the plaintiff that he had engaged other vessels to bring the remaining cargoes, and that he had no more lumber for the plaintiff to bring. But the plaintiff insisted that he had contracted to bring the other two cargoes; and in about a week, and directly after his vessel was repaired, he made a trip with the same to Manitowoc and returned empty, there being no lumber for him to bring. It

June Term
1854.

Bradley &
Cutler
vs.
Denton.

further appeared that plaintiff applied to one Jones at Manitowoc for freight on his second trip.

On the part of the defendant, Henry S. Durand was called as a witness, who testified among other things, that in June or July, he was present at a conversation between Bradley and Denton, and heard them make a contract by which Denton agreed to make one trip to Manitowoc with the schooner Dolphin, for lumber, at fourteen shillings per thousand. That Bradley wanted him to make a contract to bring the whole of the defendant's lumber, which the witness understood would be some 200,000 feet, or some three or four cargoes. That Denton replied that he would not contract for more than one trip until he could ascertain how much water there was on the bar at Manitowoc river, and whether he could come out with a full cargo without rafting or lighting.

There was also evidence that the vessel was old, in a leaky condition, and uninsurable, and further evidence tending to prove that the plaintiff had agreed to bring one cargo, and that upon his return to Racine he would inform Bradley whether he would bring the remainder.

The defendant's counsel then offered to prove " that there was plenty of lumber to be brought from Twin Rivers at the time of the second trip. That Twin Rivers was distant only some seven miles, that there was no difference in price and profit, in carrying lumber from Twin Rivers and from Manitowoc, and that the plaintiff was informed that there was lumber at Twin Rivers to be freighted." This evidence was rejected by the judge as immaterial, to which the defendants excepted. The defendants further offered to prove, that Twin Rivers is on the west shore of lake Michi-

gan seven miles from Manitowoc, and that there was
plenty of lumber at the former place to be freighted
at twelve shillings per thousand. Which offer was
objected to by the plaintiff. The judge held that the
evidence was immaterial, that the plaintiff was not
bound to go with his vessel to any other port than to
Manitowoc, but would suffer the same to go to the
jury to be considered by them, subject to his charge
thereon.

The evidence being closed, the judge charged the
jury, *first;* that if they should find " that the contract
was made for the freighting of three loads of lumber,
as claimed by the plaintiff, the rule of damages would
be the whole amount of the contract price, subject to
be reduced by defendants showing that other freight
was offered the plaintiff at Manitowoc ; that the plain-
tiff was not bound to look up other freight, and that
he was not bound to go to any other port on the lake
after such freight, but that it must be offered to him
at Manitowoc ;" and, *secondly,* the court did further
charge the jury " that if they believed the contract
was conditional, that is, if the plaintiff agreed to
bring one vessel load for the defendants, and he was
then to decide whether he would bring the remainder,
the defendants had no right to interfere and rescind
the contract until the plaintiff had decided whether
he would bring the other two loads."

The counsel for the defendants requested the court
to charge the jury, *thirdly,* that if they believed there
was a contract between the parties to freight three
loads of lumber, and that there was plenty of lumber
at Two Rivers to be freighted, and the plaintiff was
informed of it, and was also informed by the defend-
ants that they had no lumber at Manitowoc for him

37

JUNE TERM 1854.

Bradley & Cutler vs. Denton.

to carry, and there was no material difference in the cost of shipping from either port, he could not recover for making the second trip to Manitowoc ; but that the measure of damages would be the difference between the contract price of fourteen shillings per thousand, and the current price at the time, from Manitowoc or Twin Rivers. This instruction the court refused to give, but charged the jury that the plaintiff was entitled to recover the full contract price unless the defendant should show that other freight was offered the plaintiff, or that he could obtain freight at the same port. Further, the defendants requested the court to charge that if they found the contract to freight the three loads, the measure of damages would be the difference between the contract and the current price. Which instructions were refused.

And further, that if the jury found there was a contract as above, but that the plaintiff was informed before leaving Racine the second time, that there was no lumber of defendants at Manitowoc for him to freight, then he was not entitled to recover for his second trip, but only for the difference between the contract and current price ; which instruction was refused. To all of which said instructions and refusals, the defendants by their counsel, excepted.

*John W. Cary*, for the plaintiffs in error.

*Wm. E. Wording*, for the defendant in error.

*By the Court*, SMITH, J. This suit was commenced by declaration in the Circuit Court by the defendant in error against the plaintiffs in error upon a contract of affreightment. The declaration alleges that the

plaintiff below, on the 8th day of July, 1851, at the

city of Racine, was the owner and master of a certain vessel called the Dolphin, used in navigating the waters of lake Michigan, and in the business of carrying lumber on said lake; that the defendants below were partners, doing business in Racine under the firm and style of Bradley & Cutler; that the defendants entered into a verbal contract with the plaintiff, by which they agreed with the plaintiff, in consideration that he would carry in said schooner Dolphin, during the summer season of the year 1851, three cargoes of pine lumber from the port of Manitowoc on lake Michigan, to the city of Racine, to furnish and provide at Manitowoc, the said three cargoes of lumber, each as soon as the plaintiff could convey the same in his vessel, and to pay him for carrying the same, fourteen shillings per thousand feet; that in the month of July, the plaintiff went to Manitowoc, and took and carried one cargo of about 67,000 feet; that afterwards, about the 23d day of July, he went to Manitowoc in his vessel for the second cargo; but the defendants neglected and refused to furnish any lumber to be carried; that the defendants in like manner refused and neglected to furnish the third cargo of lumber; and that the said plaintiff had been at all times ready and willing to carry the said three cargoes according to the terms of the contract, but that the defendants had neglected and refused to furnish and provide lumber for the last two cargoes, and that a cargo for said vessel is sixty-seven thousand feet. Whereby, &c., an action hath accrued to the plaintiff, to have and recover of the defendants, the sum of fourteen shillings per thousand feet, for the whole amount of the said three cargoes, amounting

to $351.75, and in consideration thereof, afterwards, &c.

The defendants pleaded the general issue, with notice of set off.

The cause was tried at the October term of the Racine Circuit Court by a jury who returned a verdict for the plaintiff for $112, upon which judgment was rendered. Various exceptions were taken to the ruling of the court below upon the trial, which form the subject of consideration here.

The plaintiff proved the making of the contract with Bradley substantially as laid in the declaration It further appeared that the plaintiff brought one cargo of lumber from Manitowoc to Racine, and then hauled out his vessel for repairs. That Bradley informed the plaintiff on his return, that he had engaged other vessels to bring the remaining cargoes, and had no more lumber for the plaintiff to bring but the latter insisted that he had contracted to bring the other two cargoes; that about a week afterwards, his vessel having been repaired, the plaintiff made a trip with his vessel to Manitowoc, and returned empty, there being no lumber there for him to bring. That the Dolphin brought one cargo of about 67,000 feet, and two other vessels respectively about 92,000 feet and 64,000 feet; and further, that the plaintiff applied to one B. K. Jones, and others at Manitowoc, for freight, at the time he returned empty.

On the part of the defendants, evidence was given tending to establish a different contract from the one declared upon, to the purport that the plaintiff did not, and would not agree to carry the three cargoes, until he had made one trip, and had ascertained the depth of the water upon the bar at Manitowoc, and

June Term 1854.

Bradley & Cutler
vs.
Denton.

would not make a contract for more than one cargo until after his return. It was also proved on the part of the defendants, that when the plaintiff returned from his first trip, the vessel was in a very leaky condition, and the lumber was very wet.

The defendants offered to prove that the common price for bringing lumber from Twin Rivers or Manitowoc to Racine, was twelve shillings per thousand, the same from both places, and the profit the same; that there was plenty of lumber at Twin Rivers to be freighted, but not at Manitowoc, and that Denton was told that there was plenty of lumber to be got at the former place, only seven miles from Manitowoc, at twelve shillings per thousand. But the court declared his opinion that this evidence was immaterial, but would suffer the same to go to the jury, subject to such directions as might be given in the charge.

It was also proved that the plaintiff had been paid $100 for bringing lumber.

So much of evidence and offers of evidence on the trial, has been stated, in order that the nature and force of the charge of the judge, and of the exceptions thereto, may the better be understood and appreciated.

After the testimony was closed, the circuit judge charged the jury as set forth in the statement of the case.

1st. We think in this instruction that the judge misapprehended the rule of law applicable to cases of this kind. It was admitted that there was a plenty of lumber—freight of the same kind as that described in the contract, at Twin Rivers, and it was admitted that the latter place was only seven miles from Manitowoc. We are not prepared to say, that, if the plain-

June Term
1854.

Bradley &
Cutler
vs.
Denton.

tiff below proceeded on his second trip to Manitowoc in pursuance of the contract, he was bound to go to another port, though only seven miles distant, in order to search for and obtain return freight. It would certainly have been a reasonable and generous act on his part, to save his employers from loss as far as possible. But he was bound by law to seek freight in Manitowoc, when he found that his employers had none there; and the judge errred in charging the jury that he was not bound to look up other freight The rule of law in such cases is well settled, and certainly is founded upon the clearest principles of equity. If the freighter fails to furnish the return freight as stipulated by the contract, it is the duty of the master to seek for and obtain other freight if possible. We shall comment further upon this branch of the case, when we come to discuss the third series of instructions.

2d. We also think the judge erred in the second instruction given to the jury.

We have already said that we are not prepared to say that the plaintiff, on the second trip, was bound to go to Twin Rivers, another port, to look for freight. But there was evidence going to show that the contract between the plaintiff and defendants was different from the one declared upon, in that the plaintiff refused to enter into a contract for carrying the three corgoes, until he had made one trip, and had ascertained whether the water on the bar at Manitowoc was of sufficient depth to enable him to enter his vessel at the mouth of the river, and that he would inform the plaintiff on his return from the first trip, whether he would carry the other two cargoes or not. This contract, if the jury should find from the evi-

dence that it was the real contract between the parties, if not fatal to the plaintiff's case, on the ground of variance, as we are inclined to think it was, placed the parties in a different position from the one declared upon. · If the plaintiff was not bound to carry the three cargoes, the defendants were not bound to furnish the freight necessary to make them up. The obligations of all valid executory contracts are mutual, and one party cannot be bound by an agreement, without a correlative obligation on the other party. Under the conditional contract contemplated by this instruction, the plaintiff was under no obligation to carry more than one cargo of lumber, and the defendants were not bound to furnish him more freight than he was bound to carry. Up to the time of his return with the first cargo, it was perfectly optional with him to go or to stop. He could not be required to do more, and it was equally optional with the defendants to continue the contract or to recede from it. This right to put an end to the contract upon the completion of one trip, was mutual, and we think the instruction erroneous. But, as the testimony in regard to the precise terms of the contract was conflicting, and the jury have passed upon it, we are bound to presume that they found the contract as laid in the declaration, and hence the instruction may have had no effect upon the verdict.

3d. The question involved in this instruction is one of very considerable importance, and has been carefully considered in two respects: *first*, as to the legal duty of the plaintiff in the seeking freight at his port of destination, and his duty to go to another near port to procure it; and, *secondly*, as to the measure of damages. First, as to the duty of the plaintiff

to seek other freight. He was informed before starting on his second trip, by the defendants, that they had no lumber at Manitowoc to be shipped, they having engaged other vessels to bring what remained after the first cargo. This was at the home port. The contract might then be considered as violated, and the plaintiff's right to damages fixed. The plaintiff was not bound to go to Manitowoc for the second cargo, in order to render the defendants liable for a breach of the contract. It was enough that he was ready and willing to perform on his part, and when the defendants informed him that they had no more lumber for him to carry, they were then liable to the plaintiff for all the damages that would result to him in consequence of a breach of the contract. His right of action was then complete, and could not be improved by making his second trip. What, then, was the rule by which his damages were to be estimated? Had he proceeded on his second trip to Manitowoc in good faith, under the supposition that the defendants would supply him with the freight according to the contract, and was obliged to return empty, in consequence of their failure to do so, the rule of damages in that case would doubtless have been the contract price of the freight. But he did not proceed on the second trip in good faith. He was as well aware that the defendants would not supply the freight, before he left his home port, as he was on his arrival at Manitowoc. Why, then, did he undertake this second voyage? If it was done for the purpose of increasing the damages, he certainly cannot, and ought not to recover freight. If he did it in ignorance of his rights, supposing that it was necessary for him to go to Manitowoc after the freight, in order to entitle him to his

right of action, he cannot charge upon the defendants the consequences of his own ignorance. When a party violates his contract he is liable for all the damages that directly and necessarily result from the breach. But the other party is not permitted to do any act, which unnecessarily increases the damages. If I am hired to service for twelve months at a stipulated price, and my employer without cause discharges me from employment, I cannot lie idle the remainder of the year and recover the stipulated wages. I am entitled to all the damages which are the direct and necessary consequences of the violation of the contract. But I have a duty to perform. I must seek other employment though at less wages. Chief Justice Mellen, in *Miller vs. Mariner's Church*, 7 *Greenlf.* 51, says, "Remote and speculative damages although susceptible of proof, and deducible from the non-performance, are not allowed; and if a party injured has it in his power to take measures by which his loss may be less aggravated, this will be expected of him. If a party entitled to the benefit of a contract, can protect himself from a loss arising from a breach, at a trifling expense, or with reasonable exertions, he fails in social duty if he omits to do so, regardless of the increased amount of damages for which he may intend to hold the other contracting party liable."

Chief Justice Shaw, in delivering the opinion of the court, in a case involving a question of damages, uses the following language: "In assessing damages, the direct and immediate consequences of the injurious acts are to be regarded, and not remote, speculative and contingent consequences, which the party might have easily avoided by his own act." The

June Term 1854.

Bradley & Cutler vs. Denton.

same doctrine is held in *Thompson vs. Shattuck*, 2 *Met.* 615 ; and in *Shannon vs. Comstock*, 21 *Wend,*. 475 ; and in *Vedder vs. Hildreth*, 2 *Wis.* 427, and in numerous other cases.

As before intimated, if the plaintiff had gone on his second trip to Manitowoc in good faith, in the full expectation of receiving the stipulated freight at that place, we are not prepared to say that he was bound to go to Twin Rivers in search of other freight. Various circumstances might excuse him. He may have been insured for that specific trip only ; circumstances of weather, or the condition of his vessel, or other considerations might render it inexpedient so to do. But he was bound to look for and procure other freight at Manitowoc, if possible. He could not excuse his returning empty, merely from the fact that no other freight was offered him. In Abbott on shipping, page —, the rule in regard to a ship chartered for a foreign voyage, with a covenant for return freight, in case of default is thus expressed : "If the default be owing to the personal negligence or inability of the freighter, and not to any general cause, the master on his arrival at the port of lading, *should obtain another cargo, if possible*, from other persons, and not sullenly hoist sail and depart, in order to charge the merchant with the whole freight." These remarks are quoted with approbation by the Supreme Court of New York, in the case of *Heckscher vs. McCrea*, 24 *Wend*, 314, where the same rule was adopted. Mr. Justice Cowen says : "It (the rule above cited,) shows not only that the master has a duty to perform, but that if he do not perform it, and on the contrary so conduct without necessity, and on full notice, as to enhance the mischief under a belief

that the freighter must bear all the loss, he cannot re-

cover in respect to damages thus incurred, thus drawn upon himself by his own voluntary, unnecessary act. In the language of Lord Kenyon, "there would be *no pretence for damages.*"

That there may be cases, growing out of the particular contract of the parties, or the attending circumstances, which would render this rule inapplicable, is very true, but as a general rule it is founded in equity and social duty, we think it worthy the force of law ; and one to be applied whenever practicable.

The application of this principle of law, enables us to ascertain what was the duty of the plaintiff at Manitowoc, on his second trip, upon the supposition that it was undertaken in good faith, for although his was not a foreign voyage, yet the principle is the same. His duty was undoubtedly to have procured another cargo, if possible.

But we cannot regard the undertaking of the second trip as done in good faith. The plaintiff knew that the defendants had no freight there for him. The contract as he claims it to have been, had been violated on his return from the first trip. His duty was then clearly, not to lie idly by with his vessel, nor to start upon a bootless voyage, in order to charge the defendants with expense and loss, but to have sought other employment for his vessel, with reasonable diligence, and to look to the defendants for the direct and necessary consequences of their breach of contract. That he might have found other employment for his vessel, of a similar nature, and at current rates, is apparent from the proof that there was plenty of lumber at Twin Rivers to be freighted

June Term
1854.

Bradley &
Cutler
vs.
Denton.

to Racine, though at a less price than that of his con-tract. As other employment could have been obtained at the usual rates, and he neglected to avail himself of it, he cannot charge the defendants with the consequences of his own wrong. If his motive in starting upon his second trip, was honestly to search for employment, knowing that the defendants had violated their contract, and was informed of sufficient employment to be had at Twin Rivers, a port of as easy access as that of Manitowoc, and only seven miles distant, we can see no reason why he should not have engaged his vessel in such service. If, however, he had gone to Manitowoc in good faith, and expecting the stipulated freight, but finding none, and having diligently sought for other freight, was unable to procure it, and necessarily returned empty, the rule of damages might have been the contract price for the cargo. The fundamental principle upon which the damages, in maratime contracts are to be adjusted, does not materially differ from that applicable to all contracts, viz: to make adequate compensation for the loss and injury which are the direct and immediate consequences of the breach. It is only the application of this just and equitable principle to the circumstances of the case, which creates difficulty or requires distinctions to be made.

The judgment of the circuit court is reversed, and the cause remanded for a new trial.