East Wisconsin Trustee Company, Administrator, Respondent, vs. O'Neil and another, Appellants.*

*September 16—October 11, 1949.*

* Motion for rehearing denied, with $25 costs, on November 29, 1949.

For the appellants there was a brief by *Byrne, Bubolz & Spanagel* of Appleton, and *Fischer & Smith* of Manitowoc, and oral argument by *Edward J. Byrne.*

*John R. Cashman* of Manitowoc, for the respondent.

MARTIN, J.   The first issue in this case is whether the plaintiff has met the burden of proof to show actionable negligence, in respect to control and management and in operating the automobile on the left half of the highway, on the part of the defendant.

Defendant's testimony is substantially as follows: He was driving westerly at about thirty-five miles per hour with the right wheels of his car about one and one-half to two feet from the north edge of the black-top.   He observed the Muench automobile come over the crest of the hill ahead of him on the south side of the highway.   However, after Muench's car came over the crest it started cutting over onto defendant's side of the road.   Defendant dimmed his lights and turned slightly to the right, removed his foot from the accelerator, but he did not have time to apply his brakes before the collision.   As a result of the impact the defendant's car veered to the left, and after bouncing about finally came to rest on the south side of the road facing into the ditch.

Joseph Stuiber, an occupant of the Muench automobile, testified that Muench was driving at approximately thirty-five to forty miles per hour and that the Muench car was on its right-hand side of the highway when it went over the top of the hill immediately before the collision.   He testified that he did not see the O'Neil automobile or its lights before the impact, but that he saw an object.   At the trial on cross-examination by defendant's counsel he said: "And as we went over the crest of the hill there was something come toward us, we was on our side of the road, and that is when it turned black."

In the statement to the insurance investigator, written by the investigator, he said: "While traveling east and just the moment before impact I saw some object in front of us. Until after the accident was all over I didn't know what this object was. I then found out it was another car. I don't recall seeing any lights on this car prior to impact. I do know the lights were on the Muench car."

At the inquest he testified that he knew they were going to hit something, but he didn't know what it was; that he didn't remember seeing the headlights of the other car; and, "I think we were over on our side of the road."

The jury could conclude from this evidence that Stuiber was awake and watching the road and that his testimony was reliable. Its credibility was for the jury.

After the accident the county traffic department was called and Officers William Ladwig and Frank Suchomel came to the scene. Officer Ladwig saw a skid mark which he identified as being made by the defendant car's left rear wheel. It was twenty-two paces long, entirely on the south half of the roadway and ran east and west, veering suddenly to the south and running to the left rear wheel of defendant's car. Officer Suchomel testified that Ladwig told him about the skid mark that night, but he was too busy (taking care of the injured, setting up flares, directing traffic, etc.) to look at it.

The next day these two officers and Officer Falvey returned to the scene and all testified that this skid mark ran sixty-nine feet east and west entirely on the south half of the road, then suddenly veered off into the south ditch. The point where it suddenly veered to the south was eight and one-half feet from the south edge of the traveled portion of the road.

Defendant's testimony about what his car did when hit was that it suddenly veered to the left and then went on the shoulder or in the ditch on the south side of the black-top. The left front wheel of his car was broken and turned underneath. His further testimony on cross-examination was:

"*Q.* Now, your testimony is that the first time you saw the Muench automobile that night was when it came over the crest of the hill, is that correct? *A.* Yes, sir.

"*Q.* And at that time the Muench automobile was entirely on the south half of the roadway, is that right? *A.* As far as I can visualize, yes, sir.

"*Q.* Sir? *A.* As far as I could see it was.

"*Q.* And how much time elapsed between the time that you saw the Muench car as it came over the crest of the hill before the accident happened? *A.* I couldn't tell you, sir, was a matter of moments.

"*Q.* Did it happen just momentarily like that? *A.* Yes, sir, it did."

Considering defendant's testimony related above, the skid mark left by his tire entirely on the south half of the roadway and veering sharply to its left eight and one-half feet from the south edge, the direct testimony of Stuiber that Muench was entirely on his right side of the road and suddenly just at the time of the collision Stuiber saw an object in front of him which he later found out to be a car, it was quite proper for the jury to conclude that defendant was negligent in driving upon the wrong side of the road and in not properly controlling his car.

Defendant has cited several cases which we will briefly distinguish. In *Clark v. McCarthy* (1933), 210 Wis. 631, 637, 246 N. W. 326, it is stated:

"Since we have held that there is no oral testimony which could reasonably lead to the conclusion that McCarthy was negligent with respect to control, lookout, or yielding half of the roadway, the case of plaintiff must stand or fall upon such inferences as may properly be drawn from the physical facts, standing alone."

There were no skid or tire marks in that case.

There was no evidence as to what happened in *Hyer v. Janesville* (1898), 101 Wis. 371, 77 N. W. 729. In *Bauch*

*v. State Farm Mut. Automobile Ins. Co.* (1947), 251 Wis. 489, 29 N. W. (2d) 494, it was appellant's contention that Bauch was driving the automobile, and respondent's contention that Schroeder was the driver. Schroeder testified positively Bauch was driving. If Bauch had been found in the car behind the wheel, or out on the left side, and Schroeder on the right side, the case might have been different, but both boys were lying to the right of the car. The physical facts in that case left room for controversy. In *Myers v. Ihde* (1946), 248 Wis. 604, 22 N. W. (2d) 603, the testimony of the witnesses was contradictory as to the driving of the cars and the marks and broken glass. This court held that the evidence raised a jury question, and the trial court had no right to change the jury's answer. In the present case there is no contradictory testimony regarding the location of the skid mark.

The plaintiff has met the burden of proof as it appears in *Samulski v. Menasha Paper Co.* (1911), 147 Wis. 285, 133 N. W. 142, and *Ennis v. Milwaukee E. R. & L. Co.* (1930), 202 Wis. 277, 232 N. W. 540.

Defendant's next contention is that the trial court committed prejudicial error in admitting photographs, Exhibits 4, 5, 6, and 7, taken on the afternoon following the accident showing the police officer and a tape.

The record regarding this is as follows:

"Mr. Cashman: Your Honor, the purpose of the exhibit is not to show the point of impact at all; I didn't ask him that question. The purpose of the exhibits is to show the skid mark. I will agree that the exhibit should not show the point of impact. It is to show the skid mark that the officer testified to; point of impact was went into and brought out by Mr. Byrne.

"Mr. Byrne: No, no.

"Mr. Cashman: I had no intention of asking the witness that question.

"Court: If that is what you contend for, Mr. Cashman, that they are offered only for that purpose to show the skid mark—

"Mr. Cashman: That is the only purpose, your Honor.

"Court: . . . the court will receive them for that purpose.

"Mr. Byrne: Then may I review the testimony of the witness with reference to the tape?

"Court: Then I understand, Mr. Cashman, you offer those only for the purpose of showing the skid mark.

"Mr. Cashman: Yes, sir.

"Court: And you make no claim that the pictures in any way indicate where the collision took place.

"Mr. Cashman: That is correct, that is my position.

"Court: The jury will so understand it. I see no objection to their being received under that statement. Mr. Cashman offers them only for the purpose of showing the skid mark and no other purpose at all, as I understand.

"Mr. Cashman: Your Honor, that is right.

"Court: And the jury will so understand it; the exhibits which the defense objected to are offered only for the purpose of showing the skid marks and have nothing to do as to where someone or other thought the collision took place; it has no bearing on that at all, the jury will so understand it. In other words, the officer was not there to see where that collision took place, the officer cannot reconstruct the scene and say that is where I think the collision took place; that is not the purpose of this exhibit, it is not received for that purpose, not particularly for that purpose."

The statement by Officer Ladwig that the tape at Officer Falvey's feet was where they figured the impact occurred was struck out and the jury was instructed to disregard it.

No substantial rights of the defendant were affected by admitting the exhibits. They were properly admitted for the purpose of showing the location of the skid mark. No prejudicial error was committed in their admission.

The final question is whether the trial court committed error by ordering judgment for plaintiff for funeral expenses of $435 in addition to $12,500 for pecuniary loss.

*Mueller v. Silver Fleet Trucking Co.* (1949), 254 Wis. 458, 469, 37 N. W. (2d) 66, relied on by defendants, was an action begun in 1945.

By ch. 247, Laws of 1947, sub. (1) (b) was added to sec. 331.04, Stats., and provides:

"If there is a cause of action in favor of the estate of the decedent, funeral expenses may be recovered on behalf of the estate; if there is no such cause of action, funeral expenses may be recovered by or on behalf of any relative specified in this subsection who has paid or assumed liability for such expenses. . . ."

The accident and death in the present case occurred on June 23, 1948, after the enactment of the above subsection, and, therefore, funeral expenses are allowable in addition to $12,500 for pecuniary loss under sec. 331.04 (1) (a), Stats.

*By the Court.*—Judgment affirmed.