LEINER, by Guardian *ad litem,* and others, Respondents, vs. KOHL and another, Appellants.

*February 6—March 4, 1952.*

*D. J. Regan,* of Milwaukee, for the appellants.

For the respondents there was a brief by *Ray T. McCann* and *Ralph J. Podell,* both of Milwaukee, and oral argument by *Mr. McCann.*

FAIRCHILD, J. The first contention of the appellant is that the evidence does not sustain the jury's verdict that he was negligent in the particulars for which he is held responsible. On this point the ruling must be against the appellant. Confusion and contradictions exist in the record, but from an analysis of the testimony on which the jury acted and which came directly from the parties, with corroboration, in certain particulars, it appears that the respondent was undertaking for the first time to ride and guide a bicycle. Although he was not qualified to manage that means of locomotion on a public highway in traffic, the jury, never-

theless, found that he was at the crucial time well within the portion of the road set aside for travel in the direction in which he was going. He was at the time on his side of the road, and it follows that had the appellant exercised ordinary care in the management and control of his automobile as he came around the bend referred to in the statement of facts, he would not have invaded the south lane of traffic and there collided with the bicycle the respondent was riding.

We will consider the evidence in connection with the point raised with relation to the instructions as to the duties resting upon the parties under the circumstances of this case. A portion of the instructions complained of reads:

"The defendant saw plaintiff operating the bicycle in a zigzag manner. He was therefore charged with a degree of responsibility for plaintiff's safety from any damage resulting to him from the operation of his automobile. This responsibility did not extend to that of an insurer of his safety, but it did hold him to the exercise of a high degree of care. From that time plaintiff's safety should have been the subject of his anxious solicitude until he had safely passed him. He was charged with a knowledge of childish traits."

The instructions followed the doctrine laid down in *Ruka v. Zierer*, 195 Wis. 285, 286, 218 N. W. 358. In using that doctrine, the purpose of the rule becomes important. It is based upon the fact that children at play respond to impulse, disregard caution, and act more frequently without thought in pursuit of their play than on judgment. It was these qualities that Mr. Justice OWEN had in mind when he wrote the opinion in the case just referred to where children were engaged in play, and one of the children "ran from the sidewalk or boulevard upon which he was playing in a diagonal . . . direction across the street." While the facts of that case were with relation to a group of children "monkeying and playing around," we have here but one child, who had assumed the role of a

traveler, and the caution with relation to the necessity of the driver of the automobile to exercise a high degree of care might properly be limited, for the respondent, under circumstances such as obtain here, was required to exercise such care as the great mass or majority of the children of the same age, intelligence, and experience exercise under the same or similar circumstances. The court did include in its instructions the following:

". . . it [ordinary care] means such care as ordinarily prudent and careful children of the same age, intelligence, and experience as Ronald Leiner, ordinarily exercise under the same or similar circumstances."

We do not regard the failure of the court to specifically eliminate the idea of play as bringing about a prejudicial error. In this case the appellant saw the situation. It is unnecessary to labor this point to any great extent, because the respondent, Ronald Leiner, was well within the territory where he had a right to be when, because of appellant's failure to exercise ordinary care in the management and control of the car, collided with and injured respondent. The inexperience or negligence of the respondent passes out of the case, for if there is anything about it which resulted in what might be styled respondent's negligence, it operated remotely and not proximately to cause the collision. If he had passed over the center of the highway into the path of the appellant's car, his negligence would have to be compared with that of the appellant. *Volkmann v. Fidelity & Casualty Co.* 252 Wis. 464, 32 N. W. (2d) 348. The jury were instructed that the appellant was not an insurer of the respondent's safety, and that respondent had the duty of exercising ordinary care such as children of his age and intelligence ordinarily exercise under the same or similar circumstances, and they were told that the operator of a slow-moving vehicle is to "operate . . . as closely as

practical to the right-hand edge or curb of the roadway. . . ." Therefore, under the circumstances here prevailing, the responsibility for the accident rests upon the appellant because of his failure to exercise ordinary care in the management and control of his machine. *Clark v. McCarthy*, 210 Wis. 631, 246 N. W. 326, is authority for holding that where two vehicles proceeding upon a highway in opposite directions collide, the fact that one of them is traveling in a zigzag fashion will not of itself support a claim of negligence on the part of the driver of such vehicle, unless it is shown that such manner of driving contributes to proximately cause the accident.

The evidence is that appellant, driving his car westerly, saw the respondent and noted the manifestations of the inexperience of the respondent as an operator of a bicycle upon a highway. The appellant testified that when the vehicles were about eighty feet apart he saw the bicycle and knew that the operator was a small boy and that he was zigzagging. It is agreed by both parties that when they were at least thirty to forty feet apart, respondent was traveling on his own side of the road, and appellant testified that "he [respondent] did not cut back to the north side of the road." The following statement was made by the appellant: "I did nothing to decrease my speed, although I could have stopped my car with my brakes within four to six feet." And again he testified that at the time of the impact he was traveling about "nineteen miles per hour." The testimony of plaintiff and defendant is in some conflict as to the exact position of each with relation to the center of the road at the time of collision. However, there is evidence which might well be and was accepted by the jury to the effect that when the appellant came around the bend the car "came way over on my [Ronald's] side of the road." On the trial respondent testified that he was about two feet from the south side of the road at the time he was thrown from his bicycle. Appel-

lant denied that his automobile ran over the boy's body. However, the boy was completely under the car, with the head toward the rear and the left arm about two and one-half feet from the left side of the car. It is undisputed that the appellant drove his car forward after the accident in order that the boy's body might be removed. It is understandable that the jury concluded that because the appellant was not sufficiently alert in the management of his automobile in approaching and passing the boy on his bicycle the accident occurred. A contribution to this result and the dispute as to the location of the vehicles may have been due to the fact that appellant was wearing his reading glasses at the time, although he is farsighted.

It is considered that in view of all the facts and surrounding circumstances there exists no prejudicial error requiring a new trial.

As to the amount of damages allowed, we do not find that there is occasion for interference because of any excess. After the accident the boy was taken to St. Joseph's Hospital at Hartford, and it was there found that:

(1) He was in shock.
(2) He had a fracture of the left femur.
(3) He had a two-inch gash in the back of the scalp.
(4) He had multiple contusions and abrasions, including bleeding from the nose.

He was put in a cast from the upper chest down to the toes on August 30, 1946. He was removed to his home in Milwaukee on September 4, 1946. He was unable to be up and around and developed rash and blisters under the cast. In October he was taken back to Children's Hospital for removal of the cast. Then traction was applied, and as weights were added the boy suffered considerable pain and had to lie on his back in one position. When he was released from the hospital in November, 1946, he had to

use crutches for about three or four weeks. Ronald continued to be an outpatient of Children's Hospital, sometimes reporting twice a month. In February, 1951, an examination showed that both the femur and tibia of his left leg were longer than those of his right, which discrepancy had by then caused a curvature of the spine. In April, 1951, Ronald re-entered the hospital and had seven stainless-steel staples inserted into the left femur for the purpose of retarding growth of the left leg and preventing further curvature of the spine. The removal of the staples will require further operation, and although it is the hope of the physician that with the removal of the staples there will be no permanent disability, it is not certain that the outcome will be successful and that permanent disability will be avoided. In addition to pain and suffering, as a result of the accident Ronald lost over a year of school.

*By the Court.*—Judgment affirmed.