GROSBERG, Appellant, vs. GROSBERG, Respondent.

*February 8—March 8, 1955.*

For the appellant there was a brief by *Thomas P. Maroney,* attorney, and *Michael P. Schiro* of counsel, both of Milwaukee, and oral argument by *Mr. Maroney.*

. For the respondent there was a brief by *I. A. Dinerstein,* attorney, and *William B. Rubin* of counsel, both of Milwaukee, and oral argument by *Mr. Rubin.*

BROWN, J. At the time of the judgment, June, 1954, the adopted son of the parties was eleven years old and the adopted daughter was nine. The welfare of minor children is of paramount importance in determining to whom their

custody shall be given. The trial court made findings of fact among which appear findings that the defendant "is able and well qualified to care for both the children's physical, spiritual, psychological, educational, and parental needs;" that both parties are fit and proper persons to have the custody of the children; but that, although plaintiff has given the children good physical care she has an emotional instability which is detrimental to the children's welfare and which will have an adverse effect upon them in years to come if they are placed under the plaintiff's guidance and supervision. The evidence thoroughly supports the court's findings that defendant is a fit and proper person to have custody of the children. Respecting the plaintiff, in addition to the husband's testimony concerning her emotional defects, there was the testimony of Dr. Jefferson, a psychiatrist who examined the plaintiff by direction of the divorce counsel. He testified that plaintiff is not legally insane but "it is my opinion this woman's attitude and her general instability are of such a nature and consistency that they will inevitably be passed on to her children if she lives with them." He said that it was unsafe for the children to be in the custody of Mrs. Grosberg. Her own expert, Dr. LaMalfa, testified that her emotional conflicts are on a neurotic level and another expert whom she called, Dr. Schaeffer, testified that she is emotionally unstable. This instability manifested itself in constant arguments and quarrels with her husband, applications to him of what she called the "silent treatment" lasting as long as six weeks at a time when she would not speak to him and resorted to, as she testified, on thousands of occasions. The summoning by her of police to help her deal with her two children and other extreme and abnormal conduct in relation to her family, neighbors, and persons generally with whom she came in contact, gives further support to the court's decision to remove the children from her immediate care, while granting the rights of visitation.

The record shows that the trial court had the benefit of demonstrations of her temperament also. At a hearing before the divorce counsel her conduct made it necessary for the divorce counsel and commissioner to suspend proceedings and order her to leave the hearing room. Judge FRANCIS X. SWIETLIK, before whom the action came at one time, considered her behavior sufficiently abnormal to make the appointment of a guardian *ad litem* advisable and made such an appointment. During a recess in the course of the trial before Judge SULLIVAN, Mrs. Grosberg engaged in an altercation with a photographer and resumption of the trial was delayed until hostilities ceased. Upon the resumption she testified that she had not only punched the photographer but wished she had punched him a thousand times and she regretted that she had not kicked him in the shins in order to get possession of his camera.

Nor was the trial court obliged to believe any of the plaintiff's uncorroborated testimony for she herself testified that she had perjured herself on other occasions. For example, she testified that she had given false evidence in a civil action which she and her husband had brought against a laundry operated by a relative of the husband's. She told the court that she testified falsely in this matter because it seemed like a good way to get even with the relative.

After both sides had rested, Mrs. Grosberg demanded to be heard by the court and was accommodated. She lectured the court on its conduct of the trial and took over the case from her attorney by attempting then to call a witness whom she said her attorney did not know and had not planned to use, so that the witness might inform the court concerning her religious affiliations. These appeared to have fluctuated considerably, as she testified she was born and raised a Catholic, then became a Unitarian and remained so "as long as her husband's secretary could take it," and was presently a Lutheran although "she wished to God" that she had be-

come a Jew. Because she objected to the testimony of Dr. Jefferson, she called upon the court to dismiss all proceedings.

With such a record and such a demonstration it is little wonder that the trial judge considered the welfare of the children, demanded that their custody be awarded to the defendant rather than to her. We can find no fault with the court's exercise of discretion in the custody matter.

The second assignment of error is that the court admitted testimony of an attorney who had formerly represented the plaintiff in related matters. The record does not show that there was any such representation. The attorney in question had represented both parties when there was no conflict of interest, in adoption proceedings and in two damage suits, but we find nothing to indicate that there was ever any relationship of attorney and client between him and Mrs. Grosberg in respect to divorce. This attorney became attorney of record for Mr. Grosberg after the summons and complaint had been served, but he withdrew from the case when it became probable that he might be required to testify at the trial. This contention of plaintiff is without merit.

The third assignment of error is that the circuit court was wrong in requiring the plaintiff to waive privileged communications and thus admit the testimony of Dr. Jefferson. This contention is without merit also. The record shows that the court did not require a waiver but informed Mrs. Grosberg many times of her right to exclude the testimony as a confidential communication. It was difficult for the court, as well as her own counsel, to determine whether or not Mrs. Grosberg wanted the privilege maintained or abandoned. For a long time her answers to questions concerning it were not responsive and she preferred to make speeches on immaterial aspects of the question. At length she seemed satisfied with her presentation of such extraneous considerations and freely and voluntarily waived the privilege, whereupon the doctor testified.

Fourth. It is unnecessary to go into the detailed testimony of Mrs. Grosberg's behavior toward her husband. The evidence referred to on the custody question indicates the conditions under which Mr. Grosberg spent twenty years of married life. It amply sustains the findings of fact to the effect that her conduct toward him constituted cruel and inhuman treatment and sustains the trial court in its judgment granting the defendant a divorce on his counterclaim.

*By the Court.*—Judgment affirmed.