MACKOWSKI, Respondent, vs. MILWAUKEE AUTOMOBILE
MUTUAL INSURANCE COMPANY, Appellant.

*April 8—May 7, 1957.*

548

For the appellant there was a brief and oral argument by *James L. McMonigal* of Berlin.

For the respondent there was a brief by *Milton Spoehr* of Berlin, and *Lehner & Lehner* of Princeton, and oral argument by *Mr. Spoehr* and *Mr. Philip Lehner*.

WINGERT, J.   We find no error and therefore affirm the judgment for the plaintiff.

1. The jury's finding that Stollfus was negligent with respect to speed is abundantly supported in the record.  Reference need only be made to the testimony of the witness Kemnitz as summarized in the foregoing statement of facts.

It is contended that Kemnitz's observation of Stollfus' speed was too remote from the time and place of the accident, and hence the testimony should have been excluded or stricken.  Kemnitz testified that Stollfus passed him at well above 95 miles per hour at a point about three miles west of the place of collision and gradually drew away from him, and that the last he saw of the Stollfus car was when it rounded a curve three quarters of a mile west of the place of the accident.  Reference is made to *Neumann v. Evans,* 272 Wis. 579, 76 N. W. (2d) 322, where speed at an intersection was in issue, and we held that a trial court had not abused its discretion in excluding testimony that the driver had been seen going 50 miles per hour at a point one quarter of a mile before the intersection.

The present case is very different than *Neumann v. Evans,* 272 Wis. 579, 76 N. W. (2d) 322.  There the excluded testimony was of a momentary observation of speed on an open road, whereas the question in issue was the speed at an intersection, a substantially different situation.  In the present case, the Kemnitz testimony showed a continuous pattern of utterly unreasonable and unlawful speed for some ten miles

(interrupted at the village of Green Lake), and the point of collision was still open country road. In such circumstances, the jury might reasonably infer that the consistent pattern of speed adopted over 10 miles of open road was not abandoned in the 11th mile. We think the trial court was well within the bounds of reasonable discretion in allowing the jury to consider the testimony.

Appellant attacks the testimony of Kemnitz as inherently incredible, and argues that the speeds of 95 and 105 miles per hour to which he testifed would have been impossible to maintain on a highway with as many curves, albeit minor ones, as were shown to exist in Highway 23 for several miles west of the place of the collision, at several of which were signs advising maximum speed of 50 or 55 miles per hour. Serious conflicts are also pointed out between the testimony given by Kemnitz at the trial and a statement made by him ten days after the accident. It is also said that the jury, in giving a negative answer to the question whether the boys were racing at or immediately preceding the collision, must have disbelieved Kemnitz's testimony on that point.

We consider, however, that the weight to be given to the Kemnitz testimony was for the jury. While some features of it strain one's credulity, and Kemnitz was a smart-aleck witness, we cannot say as a matter of law that he was so completely unworthy of belief that his testimony should have been excluded or stricken from the record, or that the jury could not properly believe most of it. Whether his testimony at the trial was closer to the truth than the story he told in his statement to the investigator a few days after the accident was for the jury to determine. The jury could make a large allowance for exaggeration in the testimony as to the continuous 95 and 105 miles per hour speed, and still find that Stollfus was going much faster than the permissible maximum of 55 miles per hour. On such a matter, suspected exaggeration does not necessarily deprive testimony of all

weight as a matter of law. Indeed, wilfully false testimony on one point does not require the jury to reject all of the witness' evidence. *Mercer v. Wright,* 3 Wis. *645, *647; *Miller v. State,* 139 Wis. 57, 82, 83, 119 N. W. 850.

The inference of terrific speed at the point of collision was supported by photographs in the record showing an extraordinary degree of demolition of the two cars, and thus evidencing exceptional force of impact.

2. The finding of the jury that Stollfus was negligent in failing to yield one half of the main-traveled portion of the highway to Mackowski is supported by the testimony that shortly after the accident debris such as glass, dirt, and pieces of metal was lying in the north lane of the concrete highway, between the two wrecked cars, and that there was a fresh gouge in the concrete in the north lane and a mark or marks leading from that lane toward the wrecked Stollfus car. The left side of the Mackowski car was practically demolished, as was the left front portion of the Stollfus car. From the facts that Mackowski had been seen in Ripon a few minutes before the accident, that his home was in Berlin, and that a main route to Berlin led westward on Highway 23 at the place of the accident, it could reasonably be inferred that Mackowski was headed west at the time of collision. Being dead, he is presumed to have exercised due care in all respects (*Weber v. Mayer,* 266 Wis. 241, 249, 63 N. W. (2d) 318), and hence to have been driving in the north lane. There was no evidence of any want of due care on his part to rebut that presumption. In the circumstances, and in the absence of any other satisfactory explanation of the location of the debris and marks, the jury could properly infer that the cars collided in the north lane, the left front of the Stollfus car hitting the side of the Mackowski car just after Stollfus had turned a little to his right to negotiate the curve in the road at that place.

3. Since the findings of negligence on the part of Stollfus with respect to speed and failing to yield one half of the road are sufficient to sustain the verdict, we need not consider the finding that he was negligent with respect to management and control. It may be noted that evidence permitting the inference that in rounding a curve to the right the driver swung over the line into the left traffic lane would support a finding that he failed to exercise ordinary care in the management and control of his car. *Leiner v. Kohl,* 261 Wis. 159, 162, 52 N. W. (2d) 154.

4. Appellant challenges the jury's finding that the negligence of Stollfus with respect to speed was a substantial factor in causing the collision, and relies on a statement in *Clark v. McCarthy,* 210 Wis. 631, 635, 246 N. W. 326, that where two cars proceeding on a highway in opposite directions collide, speed alone cannot cause a collision in the absence of some other contributing factor. That proposition has no relevance in the present case, for here there was evidence not only that Stollfus was driving at an excessive speed, but also that he invaded Mackowski's proper lane of travel, which sufficiently distinguishes *Clark v. McCarthy* (see *East Wisconsin Trustee Co. v. O'Neil,* 255 Wis. 528, 532, 39 N. W. (2d) 369). In *Clark v. McCarthy* it was recognized that excessive speed may cause a head-on collision if it contributes to the speeder's presence on the wrong side of the road. (210 Wis. at p. 635.) In the present case the jury may have believed, and properly, that Stollfus' excessive speed caused him to swing over the center line and into the left lane as he rounded the rather pronounced curve just west of the point of collision.

5. When the testimony of Kemnitz with respect to speed was offered and objected to on the ground of remoteness, the trial judge said in chambers that he would sustain the objection were it not for the question of a speed contest or race, but with that in the picture, he would have to overrule the

objection. At the close of the trial, the court, on its own motion, submitted a question in the special verdict as to whether the two boys were racing. The jury having answered that question in the negative, appellant now contends that it should have judgment or a new trial, because the jury's finding showed that the basis on which the court admitted evidence of speed was unfounded.

We find no error. The court was warranted in receiving the testimony on speed, whether or not there was a race. The ruling was not vitiated by a remark in chambers. Moreover, the jury's negative answer to the question whether the boys were racing "at or immediately preceding the collision" does not necessarily indicate that disbelief of Kemnitz's testimony that they had been racing most of the way from Princeton. He testified that when he lost sight of Stollfus' taillight, he slowed down, and in effect abandoned the contest. Thus the jury's finding that they were not racing "at or immediately preceding the collision" is not inconsistent with a belief that they had been racing for many miles.

6. The special verdict was not invalidated by the fact that while the jury found that Mackowski was negligent with respect to lookout but that such negligence was not a substantial factor in causing the collision, they also found that 20 per cent of the total causal negligence was attributable to Mackowski. There was no evidence to support the finding that he was negligent. The answer to the question on comparison of negligence was properly stricken as surplusage. *Statz v. Pohl,* 266 Wis. 23, 29, 62 N. W. (2d) 556, 63 N. W. (2d) 711.

*By the Court.*—Judgment affirmed.