Nehls, Respondent, v. Nehls, Appellant.

*October 3—October 29, 1963.*

For the appellant there was a brief by *Strub, Woodworth & O'Connell* of Beaver Dam, and oral argument by *Ernest P. Strub*.

For the respondent there was a brief and oral argument by *David P. Hartman* of Juneau.

DIETERICH, J.   The record discloses the following facts: Shirley and Darwin Nehls were married in Juneau, Wisconsin, on January 21, 1961.  A male child, Gene K. Nehls, was born to Shirley on April 16, 1961.  On August 2, 1961, Shirley commenced an action against Darwin for divorce on grounds of cruel and inhuman treatment.  Shirley and Darwin were minors at the time the proceedings were begun, although Darwin had reached the age of twenty-one prior to the trial.  Both Shirley and the minor child were represented by guardians *ad litem* in the court below.  Shirley became twenty-one on June 23, 1963.

The alleged acts of cruel and inhuman treatment as set forth in the complaint and in the bill of particulars are: That Darwin refused to visit Shirley at the hospital at the time of the birth of the child; that he refused to adequately support Shirley and the child; and that he publicly denied being the child's father.

Darwin, in his answer to the complaint, denied that the child, Gene K. Nehls, was a child of the marriage, and denied that he refused to visit Shirley in the hospital.  By way of counterclaim, he asked that he be declared not to be the father of the child, that Shirley's complaint be dismissed, and that the marriage be declared null and void on grounds of fraud.  In support of his counterclaim, Darwin alleged that prior to their marriage, Shirley had told him that she was pregnant, and that he was the father of the child; that as a result of this fraud he was induced to enter into the marriage contract; and that only when the child was born, after a full period of gestation did he discover the falsity of Shirley's representations.

Shirley testified that she first had sexual contact with Darwin during the second week of July, 1960, and that it was their custom to have intercourse whenever Darwin came home to Juneau, Wisconsin. Darwin was in military service at the time and was stationed at Great Lakes Naval Base near Waukegan, Illinois. Shirley stated that Darwin came home every weekend during July and August, 1960, and that she saw him on each of these visits. She denied ever having sexual relations with anyone other than Darwin, although she had dated one Louis Brakob in 1959. Shirley's last menstrual period occurred between the 15th and 20th of June, 1960. She testified that in August or September of 1960, she told Darwin that she was pregnant and had been since July, and that Darwin suggested marriage at that time.

The record discloses a series of letters from Darwin to Shirley in which he arranged dates with her for the weekends of July 2, July 9, July 16, and July 29, 1960. Darwin testified that he had his first date with Shirley on July 30, 1960. When questioned about the letters, he admitted writing them, but stated that he did not keep the dates arranged for the first three weekends in July. Darwin said that he and Shirley first had intercourse on September 24, 1960, and that they had no sexual contact during the month of July, 1960. He also testified that Shirley first told him that she was pregnant on or about November 19, 1960, and that he believed he was the father of the child until its birth in April, 1961, when he learned that it was a full-term baby. Darwin admitted telling people "at every opportunity" that he was not the child's father, and that he had refused to support Shirley and the child for this reason. Darwin and Shirley have not lived together as husband and wife since the birth of the child.

Darwin's mother, Mrs. Karl Nehls, testified that she saw Shirley in a car with Louis Brakob one night in the middle of September, 1960.

Shirley's mother, Mrs. Marcella Kohrt, testified that Darwin called on Shirley during the first, second, and third weekends in July, 1960. The only questions asked Mrs. Kohrt on direct examination dealt with Darwin's visits. When Mrs. Kohrt was asked on cross-examination whether Louis Brakob had come to the Kohrt home, the trial court sustained an objection to the question as being beyond the scope of the direct examination.

Darwin's brother testified that he had known Shirley since 1957, and that he had intercourse with her several times during 1958.

Dr. Norman Erickson of Beaver Dam testified as to normal periods of gestation and stated that, counting backward from the date of the child's birth, the probable date of conception would be July 21, 1960. Basing his computations not on the date of birth, but on the assumption that Shirley's last menstrual period occurred during the middle part of June, 1960, he testified that the probable date of conception would be July 1, 1960. Taking the two together, the doctor stated that the most likely time would be some time between July 1 and July 21, 1960. Dr. Erickson's testimony and the hospital records disclosed that the baby was a full-term child, weighing six pounds, 11 ounces, with a length of 19½ inches, at birth.

After all the evidence was in, the trial court made the following comments from the bench with reference to Shirley's testimony as to her chastity:

"The court first has some observations to make on the credibility of the plaintiff. Plaintiff committed perjury on the witness stand in the opinion of the court. However, the court considers that this does not substantially impair the credibility of the plaintiff. The court observes that it is hardly conceivable that any female, even under oath as this plaintiff was under oath, would have answered the question

put to her on direct examination and relating to her chastity in any different manner."

The trial court likewise made the following comments with reference to the credibility of Darwin's testimony:

"The tenor of the letters which were received in evidence, written by the defendant to the plaintiff on June 28 of 1960, July 6, 1960, July 13, 1960, and July 27, 1960, the tenor of these letters is hardly consistent with the defendant's testimony that he had never dated the plaintiff until July 30, 1960. Indeed the tenor of these letters is that the parties did have a relationship prior to July 30, 1960. . . . the defendant in this action has asserted the illegitimacy of a child born in lawful wedlock and therefore the defendant has the burden of proving this assertion by a clear and satisfactory preponderance of the evidence."

The court was of the opinion that Darwin did not meet the required burden of proof.

The following facts were found by the trial court: That the child, Gene K. Nehls, was born of the marriage, and that Darwin's acts of telling people that he was not the father, along with his refusal to support Shirley and the baby, constituted cruel and inhuman treatment. The court's conclusions of law were that Shirley was entitled to an absolute divorce, and that Darwin Nehls was the father of the child.

The issues on this appeal are:

(1) Whether the finding that the plaintiff wife committed perjury on the witness stand so impaired her credibility as to require the trial court to refuse her a divorce.

(2) Whether the trial court erred in refusing to allow cross-examination of plaintiff's mother as to plaintiff's associations with other men.

(3) Whether the trial court's findings were against the great weight and preponderance of the evidence in the following respects:

(a) In determining that the defendant was the father of the child, and that he was not entitled to have the marriage annulled on grounds of fraud.

(b) In granting an absolute divorce to the plaintiff.

## (1) *Perjury.*

Appellant Darwin Nehls contends that Shirley's perjury should have caused the trial court to refuse her a divorce.

It is a fundamental rule of law that if a witness wilfully testifies falsely as to any material matter, the finder of fact may reject all of the witness' evidence, if it is not corroborated. *Miller v. State* (1909), 139 Wis. 57, 82, 83, 119 N. W. 850; *Grosberg v. Grosberg* (1955), 269 Wis. 165, 168, 68 N. W. (2d) 725. However, such rejection is not obligatory for this court has stated that wilfully false testimony on one point does not require a jury to reject all of the witness' evidence. *Mercer v. Wright* (1854), 3 Wis. 568 (*645), 569 (*647); *Mackowski v. Milwaukee Automobile Mut. Ins. Co.* (1957), 275 Wis. 545, 550, 551, 82 N. W. (2d) 906. Where there is a dispute in testimony, the trier of fact is the judge of the weight and credibility to be accorded to the testimony of the witnesses. *Timm v. State* (1952), 262 Wis. 162, 54 N. W. (2d) 46; *Reimer v. Reimer* (1959), 7 Wis. (2d) 146, 96 N. W. (2d) 375; *Estate of Fillar* (1960), 10 Wis. (2d) 141, 102 N. W. (2d) 210. In the instant action, the trial court was of the opinion that Shirley's testimony as to her chastity constituted perjury. However, the trial court also felt that her perjury on this point did not affect her credibility as to other related matters, and we agree.

## (2) *Cross-examination.*

The appellant contends that it is reversible error for the trial court to have barred the attorney for the defendant from

cross-examining the mother of the plaintiff regarding the association of the plaintiff with Louis Brakob. The transcript reveals that the entire direct examination of Mrs. Kohrt was as follows:

"*Q.* Will you please state your name? *A.* Marcella Kohrt.

"*Q.* And Mrs. Kohrt, you testified here previously, didn't you today? *A.* Yes.

"*Q.* You are the mother of Shirley, the plaintiff? *A.* Yes.

"*Q.* Now Darwin has testified that during the month of July, 1960, the only time he came to your farm, to your premises, was on the last weekend in July, I believe he said it was July 30. Did you hear him say that? *A.* Yes.

"*Q.* Do you have any recollection as to whether or not he was at your farm any other time during the month of July, 1960? *A.* He was there every weekend in July except one weekend when he didn't come home, but I don't remember the date. But he did come on Friday evenings, Saturday evenings and Sunday evenings but Sunday evenings he left early. And occasionally he picked her up Sunday afternoons. And during August he gave her his class ring.

"*Q.* Do you remember whether or not he came there on the first weekend in July which would have been— *A.* Yes, he did. He was there the first, second and third. I remember that.

"*Q.* He came to see Shirley? *A.* Yes, he did. Then they left. They would stay at our place awhile and then they would go away.

"*Q.* I have no more questions."

On cross-examination, Mrs. Kohrt was asked the following question: "Did this Louis Brakob come to your house?" Counsel for the plaintiff objected to the question as being beyond the scope of the direct examination, and the court sustained the objection.

The extent of cross-examination of a witness lies within the discretion of the trial court, and it is fundamental that the scope of the cross-examination is limited to matters covered by the direct examination, especially where the cross-

examination seeks to explore side issues of little materiality. *Earley v. Winn* (1906), 129 Wis. 291, 109 N. W. 633; *Dralle v. Reedsburg* (1909), 140 Wis. 319, 325, 122 N. W. 771; *Smith v. Atco Co.* (1959), 6 Wis. (2d) 371, 387, 388, 94 N. W. (2d) 697; *Musha v. United States Fidelity & Guaranty Co.* (1960), 10 Wis. (2d) 176, 183, 102 N. W. (2d) 243. Upon the record in the instant action we find no error in the trial court's ruling.

(3) *Evidence Supporting the Trial Court's Findings.*

It is fundamental that the facts found by the trial court will not be set aside unless they are contrary to the great weight and clear preponderance of the evidence. *Blumenfeld v. Eichenbaum* (1959), 7 Wis. (2d) 1, 95 N. W. (2d) 754; *Barker Barrel Co. v. Fisher* (1960), 10 Wis. (2d) 197, 102 N. W. (2d) 107.

(a) *Paternity and annulment.* This court has held that where a man is induced to marry a woman because of her false representations that she is pregnant by him, and where he would not have married her if she had not made such representations, he is entitled to an annulment on grounds of fraud under sec. 247.02 (4), Stats. *Masters v. Masters* (1961), 13 Wis. (2d) 332, 341, 108 N. W. (2d) 674. In the instant action the burden of proof is upon the husband, Darwin, to prove that he was not the father of the child in order that he prevail on his counterclaim.

Sec. 328.39 (1) (a), Stats., establishes the presumption that a child born in wedlock is a legitimate child of the marriage. That section provides as follows:

"PRESUMPTION OF LEGITIMACY; SELF-CRIMINATION, BIRTH CERTIFICATES. (1) (a) Whenever it is established in an action or proceeding that a child was born to a woman while she was the lawful wife of a specified man, any party asserting in such action or proceeding that the husband was not the father of the child shall have the burden of proving

that assertion by a clear and satisfactory preponderance of the evidence. In all such actions or proceedings the husband and the wife are competent to testify as witnesses to the facts. . . ."

Shirley testified that she had sexual relations with Darwin on the second weekend of July, 1960, and almost every weekend thereafter up to the time of their marriage. Shirley's mother testified that Darwin had dates with Shirley on the first three weekends of July, 1960. Certain letters from Darwin to Shirley arranging dates during July were received in evidence. Darwin's testimony was to the effect that although he had made dates with Shirley for the first three weekends in July, he did not keep them, and that his first date with her was on July 30th. Darwin also testified that he first had sexual relations with Shirley on September 24, 1960. A bartender testified that Darwin was in his tavern with some other men on the evening of Saturday, July 9, 1960.

The trial court found that Darwin had not met the required burden of proof. Upon a review of the testimony, we determine that the finding of the trial court that Darwin is the father of Gene K. Nehls is not contrary to the great weight and clear preponderance of the evidence.

(b) *Shirley's grounds for divorce.* The complaint charged Darwin with cruel and inhuman treatment in that he refused to see Shirley and the baby after she returned from the hospital; that he failed to support them; and that he repeatedly told people that he was not the father of the baby. Shirley testified that all this caused her great mental suffering. Darwin did not dispute these charges at any time. His argument is that all this happened after the child was born, and it was not until this time that he "realized he was not its father."

In *Gordon v. Gordon* (1955), 270 Wis. 332, 339, 340, 71 N. W. (2d) 386, this court stated the general rule as to

what constitutes cruel and inhuman treatment in the following language:

"There is no yardstick definition for cruel and inhuman treatment. Each case depends for construction on its own peculiar circumstances. . . .

". . . However, treatment which does or is well calculated to impair the health of a party, makes the marriage state intolerable and renders a party incapable of performing his or her duties in married life, satisfies the 'cruel and inhuman treatment' referred to in the statute."

The trial court found as a fact that Darwin's conduct was such as to naturally cause mental suffering to Shirley and to render impairment to her health probable so that further effort on her part to perform the duties of the marriage state would be dangerous to her. The trial court also found that it is wholly and absolutely impossible for Shirley to live with Darwin, and that his conduct has wounded her mental feelings and has actually undermined her health, and granted a divorce on the grounds of cruel and inhuman treatment. We determine that the findings of fact of the trial court on this point are not against the great weight and clear preponderance of the evidence.

*By the Court.*—Judgment affirmed.