McBRIDE, Judge.
This is a suit brought against William J. Jastram and wife, in solido, on an alleged series of loans made by plaintiffs to Jas-tram. The trial culminated in a judgment being rendered against the husband for $615, the amount prayed for, and he has appealed therefrom.
Jastram, sometimes hereinafter referred to as defendant, was in the employ of-plaintiffs at a' weekly salary of $70. Mrs. Deslattes, for the plaintiffs, testified that shortly before March 28, 1958, Jastram asked her for an increase in salary which she refused. She further stated defendant then pleaded for a loan in order to pay certain pressing and accrued bills, which loan plaintiffs granted, and thereafter commencing March 28, 1958, she advanced to Jastram $15 per week by a separate check which he received along with his weekly salary checks. Defendant left his job. on January 2, 1959. This suit is to recover the aggregate amount of the series of weekly advances.
Defendant, on the other hand, disputes all of the assertions made by Mrs. Deslattes, and his testimony is to the effect that his salary was raised to $85 per weelr, the weekly checks of $15 representing the amount of the increase. He stated he asked for and was granted the raise in that he was assigned more onerous duties and assumed greater responsibilities as plaintiffs’ employee. He admits he thought it was odd that his employer would give him two checks each payday, but he states he inquired as to the reason for this a few weeks after the raise went into effect and that Mrs. Deslattes informed him that whereas he. was doing outside work, he could show that the $15 each week was for expenses and he could so place it on his income tax return.
Plaintiffs’ auditor appeared as their witness and testified that he carried an account labeled “Jastram Loan Account” on plaintiffs’ books, which had been opened upon instructions given by Mrs. Deslattes, and that said account evidenced Jastram’s indebtedness on the series of checks. Of course such testimony has no probative value and must be ignored, as it is of a purely self-serving nature.
Defendant further pointed up the fact that he would have no reason to seek a loan from his employer, as he had, in the past, whenever he needed funds in emergencies, invariably made a personal loan from a local bank, and it might be mentioned that Mrs. Deslattes admitted she had endorsed Jastram’s notes in connection with two of the said loans.
If the above were all the evidence the record contained, we would be constrained to hold in plaintiffs’ favor under the well-known principle that findings of a trial court upon issues of fact involving the veracity of witnesses are entitled to great weight and that when only issues of fact are involved, the judgment should be affirmed in the absence of manifest error therein.
*529 But there is other evidence, the significance of which evidently escaped our brother, the trial judge, clearly indicating reversible error in the judgment. On her direct examination Mrs. Deslattes testified in a most positive.fashion that in the lower left-hand corner of three of the $15 checks, she wrote in her handwriting the word “Loan.” Her exact statement is:
“Q. Mrs. Deslattes, at any time be* tween March 28, 1958, and January 2, 1959, did you indicate on any one of the cancelled checks that the advance was in the form of a loan? A. I have put the word ‘loan’ down in the corner, in very small letters; it’s written unobtrusively to save Mr. Jastram some embarrassment in cashing the check.”
The three checks bear the dates May 16, July 18 and November 28, 1958, and on behalf of plaintiffs photostatic copies thereof were offered in evidence and these plainly show the notation. In connection with the checks in question, the assistant manager of the local bank on which they are drawn appeared in response to a subpoena duces tecum issued at the behest of defendant, and he presented to the court photostatic copies taken from a microfilm record maintained by the bank, and these show that upon clearing the bank the word “Loan” did not appear anywhere on any of the checks. This leads to but one conclusion and that is that the notation was made after the checks were cashed by the payee. This requires, we believe, a most unfavorable inference against Mrs. Des-lattes, as it was she who claimed credit for making the memorandum on each of the checks before Jastram is said to have received them.
The testimony of a witness which is successfully contradicted as to one fact in the case will not be sufficient to establish another fact in the same case. Cross v. Parent, 26 La.Ann. 591. The maxim falsus in uno, falsus in omnibus is an element in this case which completely destroys the creditability of Mrs. Deslattes. Louisiana Building & Contracting Co. v. Beninati, Orleans No. 7859; State v. Washington, 107 La. 298, 31 So. 638.
Realizing the devastating implications arising from the circumstances related above, counsel for plaintiffs endeavors to convince us that the photostatic copies presented by the bank official should be ignored by the court because they were never introduced into evidence.
Counsel for defendant made the following offer:
“I now want to introduce in evidence checks numbers 4078, 7197 and 7886, issued by the A-l Employment Service, identified as defense exhibits 4, 5 and 6.”
but the documents do not contain any identifying exhibit numbers.
It is contended that the above was not an offer of the bank’s copies, but it was a reoffer of the photostats produced by Mrs. Deslattes containing the disputed notations. It is utterly impossible to follow this line of reasoning, for it would be absurd to say defendant’s counsel would reintroduce the three checks produced on plaintiffs’ behalf which' had theretofore been placed into the evidence by virtue of an offer made by counsel for plaintiffs. We feel that the offer made by the defendant’s counsel comprehended the copies of the checks which did not show the purported notation thereon and we so consider it.
In view of the unfortunate circumstances existing in the case, we could not go on record as saying that the evidence preponderates in plaintiffs’ favor when, to say the least, all of the plaintiffs’ evidence is under grave suspicion in view of the palpable falsification. There are no inconsistencies in defendant’s testimony that we can find and none have been directed to our attention. Therefore, defendant must prevail.
For the reasons assigned, the judgment appealed from is avoided and reversed, *530 and it is now ordered, adjudged and decreed that plaintiffs’ suit be dismissed at their cost in both courts.
Reversed.