**Charla R. WILLIAMS, Plaintiff and Appellant,**

v.

**Warren R. WILLIAMS, Defendant and Appellee.**

**Civ. No. 9832.**

Supreme Court of North Dakota.

Feb. 24, 1981.

---

Gregory B. Stites, of Pope & Stites, Jamestown, for plaintiff and appellant.

Daniel E. Buchanan, Jamestown, for defendant and appellee.

VANDE WALLE, Justice.

Charla Williams sought and was granted a divorce from Warren Williams on the ground of irreconcilable differences. She appeals from portions of the decree of the district court of Stutsman County, contending that the division of property is inequitable and clearly erroneous. We reverse and remand.

Charla and Warren were married at Jamestown, North Dakota, on June 1, 1974. Their only child, a daughter, was born approximately four months before the divorce was granted.

Upon graduation from high school in 1972, Warren began renting farmland from his grandfather. At the time of the marriage, Warren owned a pickup truck, a 1973 Dodge automobile, some hay, and 50 cows and 2 bulls for which he was indebted approximately one-half of their purchase price. Although the individual cows and bulls were sold periodically and the hay was used during the period of the marriage, the hay and livestock were replaced so that at the time of the divorce the quantity of both was approximately the same as at the time of the marriage.

During the course of the marriage Warren and Charla accumulated various items of personal and real property. A significant portion of this property was 635 acres acquired from Warren's grandfather under a contract for deed with the purchase price of $200,000. Several outbuildings were on

this land at the time of the divorce, although it is not clear from the record whether these buildings were on the property at the time of purchase or whether they were placed there by the Williamses subsequent to the marriage. A home, built and furnished by the Williamses, became part of the farmsite. At the trial, both Charla and Warren agreed that the market value of the land, house, and the outbuildings was approximately $285,000. In addition to the farm and buildings, items essential to the operation of the farm were purchased by the couple. These items included a tractor, a loader, a new pickup truck, and one-fourth interest in a haybuster.

The acquisition of this substantial amount of property was accompanied by a corresponding indebtedness. Evidence submitted by Charla indicated this indebtedness at the time of the divorce to be approximately $208,000. Evidence offered by Warren put the couple's liabilities at approximately $221,000.

While Warren assumed most of the duties regarding operation of the farming business, Charla worked in Jamestown as a secretary. At the time of the divorce Charla was earning a gross of $650 per month. Her net pay at that time was $499.46 per month. She also testified that in addition to her job as a secretary she assisted with the farming operation by occasionally driving a tractor, picking up machine parts in town, and helping deliver calves during calving season. These duties were carried on along with the planning and preparation of meals and general housekeeping chores. In addition, Charla has completed two years of study at Jamestown College. Some of Charla's college credits were earned prior to the marriage, although the record is not clear as to just how many.

Approximately midway through Charla's pregnancy Warren indicated to her that he did not love her, never had loved her, and that he wanted a divorce so that he could marry his former girlfriend. After an attempt at reconciliation Charla initiated this divorce action.

At the trial, both Charla and Warren submitted exhibits reflecting what they believed to be the net worth of the parties. Charla estimated this net worth to be approximately $210,341.56.[1] Warren set the figure at approximately $115,823.33. The court awarded to Warren the farmland and buildings, 2 pickups, the livestock, and farm machinery and tools, all subject to the liabilities thereon. In addition, Warren was awarded the stored grain, certain items of household furnishings, and his personal possessions and effects. Charla was awarded custody of the child, child support of $200 per month, $200 per month alimony for a period of 13 years, the 1973 Dodge automobile, certain household furnishings, and her personal possessions and effects.

The only issue raised by Charla in this appeal is whether or not the trial court made an equitable division of the couple's property.

■ This court's position that a trial court's determination on matters of alimony and property division are treated as findings of fact is too well established to require citations to authority. Our task is to look at these findings in an effort to determine whether or not they are clearly erroneous. N.D.R.Civ.P. 52(a). A particular finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on all the evidence is left with a definite and firm conviction that a mistake has been made. *Nastrom v. Nastrom*, 284 N.W.2d 576 (N.D.1979). Simply

1. This figure included an estimate that the buildings on the farmsite are worth approximately $65,000. However, Charla also submitted as evidence a document prepared by W. Gordon Christianson, an appraiser, which stated that the market value of the buildings is $31,000. If accepted as true, this figure would drop Charla's estimate of the net worth of the couple from $210,341.56 to $176,341.56. But, because Charla's exhibit did not include the stored grain owned by the couple and valued at approximately $16,200, her estimate could be read to be $192,541.56.

because we might have viewed the evidence differently, had it been presented to us initially as the trier of fact, does not entitle us to reverse the trial court. *Bender v. Bender*, 276 N.W.2d 695 (N.D.1979).

■ As we have done so often in the past, we again set forth the approach the trial court is to take in its effort to arrive at an equitable distribution of marital property in a divorce action. There exist no set rules a trial court must follow in arriving at this distribution. For instance, there is no requirement that a property division in a divorce case be equal in order to be equitable. *Hoge v. Hoge*, 281 N.W.2d 557 (N.D. 1979).

While no specific rules for the distribution of property exist, N.D.C.C. Section 14–05–24 provides certain guidelines for the trial court:

"14–05–24. *Permanent alimony—Division of property.*—When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects."

In light of this section this court has sanctioned awards based upon the guidelines enumerated in *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952), and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966), commonly referred to as the *"Ruff-Fischer* Guidelines."  These guidelines allow a trial court to consider the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time; its value and its income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material. *Nastrom v. Nastrom, supra.*

The particular findings of fact around which this appeal revolves state:

## "VII.

"During the course of the marriage, certain lands were used for conducting a farm operation, and for residential purposes. The lands are owned by the defendant's grandfather, but are being sold to the defendant on a contract for deed. In addition to the balance owed on the contract for deed, the defendant has additional monies owing to FHA, which funds were borrowed for the down payment on the contract. The Court finds that the defendant is to have sole and absolute ownership and control of these lands, and will be solely obligated to pay the obligations now against the lands, and debts arising from the farming operation.

## "VIII.

"The parties acquired certain personal property and household goods during their marriage, and it was agreed that the following division was fair: [in addition to personal possessions and effects]
"To the plaintiff:
"1973 Dodge automobile
"Black and silver chair and footstool
"Bedroom set
"Table and six chairs
"Stereo
"Kirby vacuum
"Heating pad
"Calculator
"Deacons bench
"To the defendant:
"Livestock and farm equipment

"Vehicles

"Stored grain

"Farm tools

"Couch

"Recliner chair

"Kitchen appliances

"Washer and Dryer

"Pool table

"Water softener

"Gold plaid chair

"Pots & pans

"Kitchen utensils

"IX.

"The Court finds that the plaintiff will need support and maintenance from the defendant for a number of years so that she may re-establish herself as a single parent, and so that she may continue her education to achieve stated vocational and educational goals. To that end, the Court finds that the defendant is able to pay her alimony in the sum of $200.00 per month for a period of 13 years, beginning on March 1, 1980, or until the sum of $31,200.00 has been paid in full to the plaintiff for alimony. In addition, defendant is able to pay $300.00 toward attorney's fees incurred by the plaintiff in this action."

Regarding the awarding of alimony, N.D. C.C. Section 14–05–24 provides that the determination of whether or not such an award is to be made lies within the power of the trial court. However, regarding the division of property, that section compels a trial court to make an equitable distribution of the parties' real and personal property. Confusion sometimes surfaces when the term "alimony" is used in reference to both support after a divorce and in reference to a gross sum payment, payable either all at once or on an installment basis, representing a party's share of the divided marital property. Such confusion is evident to some extent in the record of the case before us.

■ We believe that although the concepts of equitable property division and alimony are closely related, they are distinguishable and have different purposes. The equitable division of property has for its basis the husband's and the wife's respective rights to an equitable portion of the property which has been accumulated by the parties through their joint efforts and for their mutual benefit during the marriage. The function of alimony, on the other hand, has been identified by this court to be the method for rehabilitating the party disadvantaged by the divorce. *Bingert v. Bingert*, 247 N.W.2d 464 (N.D.1976). This is also clear when reference is made to N.D.C.C. Section 14–05–24, the section allowing for an award of alimony. That section states that such an award is "for *support* during life [of the recipient] or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively." [Emphasis added.]

In reviewing the trial transcript we note that at the close of the trial the trial court judge rendered an oral opinion from the bench as to property distribution, child custody, child support, visitation privileges, and alimony. In that portion of the transcript the judge was asked by Charla's attorney if he would repeat the terms he had specified as alimony. The judge responded:

"Yes. The alimony, I have to be paid at the rate of $200 a month for 13 years. I was figuring this way. That 12 years is principal and one year is interest. But that will take care of what she could be entitled to in the way of interest on these low payments of paying a division of property."

Although it is not clear from these statements just how the trial court arrived at the relationship between the $200 per month and division of property, it is clear that the court had division of property in mind at the time of the statements. However, upon re-examination of the finding of fact which relates to this $200 per month

payment from Warren to Charla, the court quite clearly sets forth facts and ultimately a rationale which relates directly to the purpose of "alimony" as identified in *Bingert, supra,* i. e., alimony as a form of support rather than a vehicle for property division.

■ Rule 52(a), N.D.R.Civ.P., requires the trial court to "find the facts specially." The purpose of this rule is to enable this court to understand the factual determination made by the trial court as the basis for its conclusions of law and the judgment rendered thereon. *DeForest v. DeForest,* 228 N.W.2d 919 (N.D.1975). Rule 52(a) further provides: "If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein." In *Hust v. Hust,* 295 N.W.2d 316 (N.D.1980), we stated at footnote 3:

"We are of the view that an oral recitation by the court from the bench which is fully recorded is entitled to consideration on appeal, under Rule 52(a), to the extent that it contains findings of fact and conclusions of law by the court."

However, while an opinion, memorandum of decision, or even a fully recorded oral statement from the bench, to the extent they reflect findings of fact and conclusions of law, will suffice under Rule 52(a), where a discrepancy exists between one of these three forms of expression and the findings of fact, the latter prevails for purposes of our review. *Schmidt v. Plains Elec., Inc.,* 281 N.W.2d 794 (N.D.1979). In the case before us the trial court made a finding of fact that Charla would need financial support from Warren during her efforts to finish her education and establish herself in the world. We believe the award to Charla of $200 per month for 13 years from Warren was based upon this finding rather than a finding that this amount was her equita-

ble portion of the value of the couple's property.

Following our determination that the $200 per month payment from Warren to Charla in Findings of Fact IX is alimony in the nature of support rather than her equitable portion of the couple's property, we turn now to the actual distribution of the couple's property as made by the trial court.

■ The focus of our inquiry regarding property distribution is limited to Findings of Fact VII and VIII. It is clear from these findings that while Charla left the marriage (a marriage which ended following Warren's expressed desire to terminate it) with only a 1973 automobile, some household items, and her personal possessions and effects, Warren acquired sole ownership of the farmland, home, farm buildings, farm equipment, livestock, stored grain, various vehicles, washer and dryer, kitchen appliances, water softener, most of the furniture, household goods, and his personal possessions and effects.

Although, on its face, the property distribution described above appears exceedingly disproportionate in favor of Warren, we are unable to state that because one party to a divorce receives the bulk of the marital property a clearly erroneous determination has been made. Proper application of the *Ruff-Fischer* guidelines could conceivably lead to such a result. However, we have expressly pointed out in the past that the *Ruff-Fischer* guidelines do not come into play until one important determination has been made. In *Hoge, supra,* we stated that where, as in the present case, sufficient evidence has been admitted from which the court can determine the net worth of the parties' real and personal property, the court must make that determination before proceeding to the application of the other *Ruff-Fischer* guidelines.[2] In the case be-

---

2. In *Nastrom v. Nastrom,* 284 N.W.2d 576 (N.D.1979), we placed a limitation on this requirement by declaring that the trial court's findings of fact need not set forth the value of each particular item making up the whole of the marital property. However, that limitation in no way eliminates the need for a determination by the trial court of the couple's net worth prior to the application of the other *Ruff-Fischer* guidelines.

fore us both parties submitted evidence of the net worth of the marital property. There was a wide discrepancy between what Charla contended was the net worth of the couple's property and the figures Warren offered to prove its net worth. Yet there was no determination made by the court as to the net worth of the couple's property and therefore the record reflects no foundation which the court could use to make an equitable distribution of the property. We believe the distribution of property made by the trial court was clearly erroneous because it is not possible to make an equitable distribution of anything until a determination has been made as to what it is that is being distributed.

In light of our discussion above, we reverse the trial court's determination as to distribution of property and remand this case for a new trial to determine the value of the real and personal property owned by the parties and for a redetermination of the matters relating to an equitable division of the property.[3]

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

3. Our ruling in this case is not intended to carry with it the implication that, as a matter of law, the farming operation involved here must

be liquidated in order to achieve an equitable distribution of the property.