Clementine SVETENKO, Plaintiff
and Appellant,

v.

Edgar SVETENKO, Defendant
and Appellee.

Civ. No. 9860.

Supreme Court of North Dakota.

May 28, 1981.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for plaintiff and appellant; argued by James D. Geyer, Dickinson.

William Heth, Dickinson, for defendant and appellee.

ERICKSTAD, Chief Justice.

The appellant, Clementine Svetenko, appeals from the judgment entered by the District Court of Stark County granting the parties a divorce and dividing the property between Clementine and the appellee, Edgar Svetenko. Clementine asserts that the division of property was clearly erroneous. We reverse and remand.

Edgar and Clementine were married in 1959. Clementine had four children born during a prior marriage. One of the children was adopted by Edgar. All of the children are now of legal age. Clementine is 61 years old, has cataracts in both eyes and arthritic pains in her back. She is physically unable to continue to perform the ranch labor she did all during the marriage. She has an eighth-grade education. Edgar is 59 years old, has diabetes and high blood pressure but is otherwise in good health. He has an eleventh-grade education.

The parties agreed that they had irreconcilable differences and both requested and received a divorce from the other. That feature of the judgment is not contested by either party.

At the beginning of the marriage, Edgar owned approximately 400 acres of land and a homestead with improvements, and inherited about 400 more acres of land during the marriage. He also owned, at the time of the marriage, 80 head of purebred cattle and a complete line of farm machinery. Clementine brought $3,000, a 7-year-old automobile and household furniture into the marriage. She also inherited some property and money during the year of the divorce proceedings.

The parties successfully ranched and farmed, with Clementine mainly taking care of the cattle and Edgar mainly taking care of the grain farming. During the marriage, they acquired an additional 800 acres of land, 196 undivided mineral acres under that land, and made various improvements to the homestead including an addition to the house and construction of other buildings. The money Clementine brought to the marriage was not used to acquire any marital property but was held solely in her name in a savings account.

The parties had marital difficulties which culminated initially in a separation in which the court granted Clementine temporary possession, control and management of the ranch and ordered Clementine to pay Edgar $900 per month as temporary support as he was ordered off the ranch. Later, the court

granted the parties a divorce and divided the property. It essentially awarded Edgar the property he brought into the marriage and that which he inherited during the marriage, and apparently attempted to divide the property the parties acquired during the marriage equally between the parties. In addition, Edgar was ordered to pay alimony in the sum of $350 per month to Clementine for ten years.

Clementine contends that she is entitled to sufficient property or alimony to enable her to maintain the standard of living she enjoyed during the marriage, and that the property division does not allow her to do so. She specifically raises the following issues:

1. Whether or not the division of property was clearly erroneous.

2. Whether or not the court's award of alimony is clearly erroneous.

3. Whether or not several of the court's property valuations were clearly erroneous.

■ Our standard of review has been set out in previous cases. *Williams v. Williams*, 302 N.W.2d 754, 756–57 (N.D.1981); *Sanford v. Sanford*, 301 N.W.2d 118 (N.D.1981). Simply stated, alimony and the property divisions are findings of fact to be made by the trier of fact and to be reviewed by this court to determine whether or not those findings of fact are clearly erroneous pursuant to Rule 52(a) of the North Dakota Rules of Civil Procedure.

Clementine asserts that the division of property and several of the property valuations were clearly erroneous. Specifically, the court divided the property and valued it as follows:

| | Edgar | Clementine |
|---|---|---|
| 800 Acres (prior-acquired) | $ 169,084 | $ -0- |
| 621 Mineral Acres (prior-acquired) | 97,650 | -0- |
| 30 Mineral Acres (prior-acquired) | unknown | -0 |
| 800 Acres 1/2 to each) | 81,260 | 81,260 |
| 196 Mineral Acres (1/2 to each) | 14,700 | 14,700 |
| Machinery | 66,870 | -0- |
| Improvements (homestead) | 75,000 | -0- |
| Cattle (1/2 of proceeds to each) | 14,720 | 14,720 |
| Mobile Home (1/2 to each) | 6,250 | 6,250 |
| Hay & Grain (1/2 to each) | 2,500 | 2,500 |
| Insurance Cash Value (1/2 to each) | 10,000 | 10,000 |
| Bank Accounts (1/2 to each) | 2,175 | 2,175 |
| Seed (1/2 to each) | 530 | 530 |
| Totals | $ 540,739 | $ 132,135 |

In addition, the parties leased the entire 1,600 acres of the ranch for a term of three years and the court divided the proceeds of the lease by giving three-fourths to Edgar and one-fourth to Clementine. The payments were to be $18,240 on April 1, 1980 and 1981, and $14,400 on April 1, 1982.

The parties' cattle were sold earlier and part of the receipts was used to pay some of their debts with the remainder of the proceeds being split equally between them. This left debts of the parties of $39,934 arising out of the purchase of the 800 acres from Anton Svetenko and $106,000 apparently arising out of the purchase of other farm and ranch property. The latter debt is apparently owed the Federal Land Bank. The debt to Anton Svetenko was divided equally between the parties and the debt to the Federal Land Bank was made the sole responsibility of Edgar.

Clementine asserts that the court undervalued the minerals, machinery and improvements. The court, however, placed the same value upon the machinery as did the appraiser, whose deposition Clementine relied upon at trial to establish the values of the parties' property. It was admitted by counsel for Clementine that the value of the minerals was speculative.

Clementine called John Kemp as an expert on mineral values. He testified that the minerals underlying the parties' land would have a value of approximately $600 per acre. He testified that he had previously estimated the minerals to be worth $1,000 per acre, but since that time a dry hole had been drilled one mile south of the Svetenko property. Edgar testified that in 1978 minerals in an irrevocable trust in the same location as his were valued at $20 per acre. Edgar stated that this was low and he would not sell his minerals for this amount. There was also testimony that the bonuses paid for leasing minerals near the Svetenko's property had varied from $155 to $260 in the state oil and gas lease sale. There was also testimony that leases from the state generally leased for a greater bonus than from private interests. The trial court valued the minerals given to Edgar at $157.25 per acre and those which were split between the parties at $150 per acre.

Additionally the court valued the improvements on the homestead at $75,000, whereas the appraiser, utilized by Clementine through deposition, valued the improvements on the homestead at $125,396. The court gave no explanation for its valuation.

■ There is no requirement that the court place a value upon the individual items making up the net worth of the parties, *Nastrom v. Nastrom*, 284 N.W.2d 576, 586 (N.D.1979); but when the court does act to set such value, there should be evidence in the record supporting the value placed upon the property.

Edgar received the bulk of the minerals and all of the improvements. This distribution resulted in his receiving approximately 80 percent of the marital estate. If the appraisers values were used, Edgar's percentage of the estate would be even higher. In *Gardebring v. Rizzo*, 269 N.W.2d 104 (N.D.1978), we said:

"The rule in North Dakota as to the effect to be given expert testimony is clear. The credibility of expert witnesses, and the weight to be given their testimony, are matters to be determined by the trier of facts.... We have also said that the trier of fact is not required to accept undisputed testimony, even of experts.... These cases do not stand for the proposition, though, that the trier of fact can arbitrarily disregard the testimony of experts, or for that matter, the testimony of any witness." [Citations omitted.] 269 N.W.2d at 109.

In this case, the appraiser's value of $600 per acre was supported by his testimony that a tract in Section 18, Township 144 north, Range 96 west, which is adjacent to the Svetenko's land, was leased for $260 per acre for a five-year lease in the state oil and gas lease sale. He also testified that tracts in this area leased from $155 to $310 per acre and that the standard for the industry for placing a value on the mineral interest itself was about five times the lease amount or a ratio of five to one. On cross examination, Kemp affirmed that this ratio could be lower or higher.

■ He also testified that "wildcat" minerals had sold in the general area for $1,000 and more an acre, but no specific tracts were specified and it appears from his testimony that such sales were before the dry hole was drilled south of the Svetenko's land. Similarly, the appraiser's value of the improvements was supported by a cost less depreciation method and a value figured from the contributing value of the land. The appraisers lower figure of $125,396 is substantially above the $75,000 value placed upon the improvements by the trial court. Although all of the improvements were given to Edgar, apparently on the theory that he should retain what he brought to the marriage and improvements were inseparable from the homestead, if the buildings on the homestead were improved substantially during the marriage, as it appears they were, it would seem appropriate that the value of those improvements be shared somehow. The appraiser's deposition indicates that the house was added on to and improved in 1962, that a 40 foot by 50 foot shop was built in 1977, and that a 40 foot by 80 foot quonset was built in 1974. The dates of acquisition of other improvements on the homestead are not listed. These improvements were all made during the marriage. At the least, evidence should be received and a determination attempted of the value of the improvements made during the marriage and their significance to an equitable distribution of the property.

■ With respect to the value of the minerals, unless the trial court is able to explain in its new findings its basis for such valuations, it would appear that some adjustment in mineral value is in order. In saying this, we recognize that the value of minerals, such as oil and gas, is often speculative, and it may be that it is impossible to establish a more firm value in this case. The value of the minerals as finally arrived at should be considered in conjunction with deciding the equitable distribution of the property.

On the record before us the findings of the trial court on valuation and distribution

of improvements and minerals are clearly erroneous.

■ Clementine asserts that the trial court also undervalued the farm machinery which was all awarded to Edgar. A review of the evidence, however, reveals that the court placed the same value on the machinery as did the appraiser under the listing "estimated value if sold at auction" on page 77 of the appendix supplied by Clementine. We conclude that on the record before us the value placed upon the machinery was not clearly erroneous, but the distribution of it is.

■ The trial court awarded all of the machinery except for the 1979 Chrysler automobile to Edgar. Even though Edgar brought a full line of equipment into the marriage, it is not equivalent to the late model line of equipment the parties have acquired during the marriage which includes six tractors (one of which is a 1973 four-wheel drive, another is a 1972 model), a 1972 combine, and many other items having dates in the 1970's, listed by the appraiser. Clementine should be allowed to share in the value of equipment which was purchased during the marriage which exceeds the value of the equipment Edgar brought into the marriage.

It is possible that the trial court considered the value of those improvements and the machinery when it charged Edgar with the entire $106,000 debt, but it is impossible for us on the record before us to so conclude.

In dividing property, Clementine asserts that she should have been awarded sufficient property to maintain the standard of living she had during the marriage, and that such a consideration should be part of the *Ruff-Fischer* guidelines.[1] In light of Clementine's assertion that the property awarded her and alimony ordered is insufficient to live on, what we said in *Williams v. Williams, supra*, 302 N.W.2d 754, is particularly applicable:

"We believe that although the concepts of equitable property division and alimony are closely related, they are distinguishable and have different purposes. The equitable division of property has for its basis the husband's and the wife's respective rights to an equitable portion of the property which has been accumulated by the parties through their joint efforts and for their mutual benefit during the marriage. The function of alimony, on the other hand, has been identified by this court to be the method for rehabilitating the party disadvantaged by the divorce. *Bingert v. Bingert*, 247 N.W.2d 464 (N.D.1976). This is also clear when reference is made to N.D.C.C. Section 14–05–24, the section allowing for an award of alimony. That section states that such an award is 'for *support* during life [of the recipient] or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively.' [Emphasis added.]" 302 N.W.2d at 758.

1. "While no specific rules for the distribution of property exist, N.D.C.C. Section 14–05–24, provides certain guidelines for the trial court:

'14–05–24. *Permanent alimony—Division of property.*—When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects.'

"In light of this section this court has sanctioned awards based upon the guidelines enu-

merated in *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952), and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966), commonly referred to as the '*Ruff-Fischer* Guidelines'. These guidelines allow a trial court to consider the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time; its value and its income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material." *Williams v. Williams*, 302 N.W.2d 754 at 757 (N.D.1981).

Maintenance of a standard of living is an express consideration in some states (*see Schantz v. Schantz*, 163 N.W.2d 398, 405 (Iowa 1968); *DeWitt v. DeWitt*, 98 Wis.2d 44, 296 N.W.2d 761, 769 (Ct.App. 1980). Although not specifically delineated as a factor under our case law, it could reasonably be said to be within our *Ruff-Fischer* guidelines which allow the trial court to consider the parties' station in life, the circumstances and necessities of each. *See* footnote 1. We do not agree, however, that a division of property and award of alimony which does not allow a person to maintain the same standard of living after the marriage is ended, as that person enjoyed during the marriage would necessitate a conclusion that the findings of the trial court are clearly erroneous. In many cases, when the property is divided between the parties, it is not sufficient to permit each of the parties to have the same standard of living after the dissolution of the marriage as each enjoyed during the marriage.

In this case, if Clementine were to liquidate her share of the property at the value attributed to it by the court of $132,-135 and were to pay $19,967 as one-half of the debt to the Anton Svetenko Estate, she would have a balance remaining of approximately $112,000, disregarding any of her individual or inherited property. If she deposited this sum in a savings account of a bank at five and one-half percent interest per annum, she would have a return of $6,160 per year. If she deposited it in a six-month money market certificate at the current rate of interest of approximately 15.354 percent, she would receive a return of $17,196 per year. While interest rates vary with the economy, we take judicial notice that at the present time there are many quality corporate bonds and public utility stocks which provide a rate of return of between 10 and 15 percent per annum which, if utilized, could provide Clementine an annual income from her share of the property of $11,200 to $16,800. We do not take notice of these rates to encourage such investments, but to illustrate our reasoning for concluding that Clementine's standard of living need not be substantially reduced and thus that on that basis at least the findings of the trial court are not clearly erroneous. At twelve and one-half percent per annum, which we believe is a reasonable figure for this purpose, Clementine would receive approximately $1,167 per month. This, with her alimony of $350, would give her an income of $1,517 per month. Clementine testified that she would need about $1,490 a month to maintain her standard of living. Thus, without invading the corpus of her share of the property division, she would be able to maintain her standard of living disregarding any social security benefits which she may be eligible to receive at age 62.

Clementine further asserts that the division of property was so unequal as to be inequitable. Edgar received approximately 80 percent of the parties' net worth. There is no requirement that the court divide the property equally. *Hoge v. Hoge*, 281 N.W.2d 557 (N.D.1979). The division of property, which is made after the court has determined the net worth of the parties, must be equitable. *Hoge v. Hoge, supra*, 281 N.W.2d at 561; § 14–05–24, N.D.C.C. This court has approved unequal divisions of property based upon the *Ruff-Fischer* guidelines. *Williams v. Williams*, 302 N.W.2d 754, 757 (N.D.1981); *see* footnote 1.

While the trial court did not expressly say it followed such guidelines, we have said that it should; therefore, we shall consider those guidelines in light of the facts of this case.

Edgar is 59 years old and Clementine is 61 years old. The work experience of both is limited mainly to the operation of a ranch and farm. Neither has had any other extensive work experience, nor did either graduate from high school. The marriage lasted for 20 years and the evidence reveals that both parties were responsible for the breakdown in the marriage.

While they have substantial property, it appears that they lived comfortably but not luxuriously. Perhaps the most important factor in this case is the health of

the parties. Clementine has cataracts in both eyes. One was unsuccessfully operated on and she expects to have an operation on the other in the near future. From the evidence it appears that she is still able to drive and said that she expects to do some type of work after the divorce but is physically unable to do ranch work. Edgar has high blood pressure and diabetes which are apparently, with medication, under control. He did not say he was going to work after the divorce although it appears that he would be able to continue farming and ranching if he so desired. The court awarded Edgar the property he brought into the marriage and apparently attempted to award him one-half of the property acquired during the marriage. While the origin of property is a consideration, the court may award such separate property to the other even if it were acquired before the marriage or if it were inherited. *Fine v. Fine*, 248 N.W.2d 838, 840–41 (N.D.1976).

In this case, both parties contributed to the success and growth of the ranch after the marriage. The property Edgar brought to the marriage was the nucleus of the property that the parties owned at the time of the divorce. It was the property which produced the income which helped them acquire other property. In light of the substantial other property acquired, the court was not clearly erroneous per se in making the division based upon what the parties brought into the marriage if such a division is otherwise equitable.

Clementine has had surgery on one eye and needs surgery on the other eye. She is 61 years old with limited work experience. To meet the necessities of life, if her eyesight fails her and she is unable to work, she will have to liquidate and invest her share of the property to secure an income that will support her. Although when her property is liquidated she may be able to survive, she should not, for that reason, be deprived of her fair share of the equity she has earned in the property of the parties. For the reasons stated earlier, we believe the judgment must be reversed and the case remanded with instructions to the court to

receive testimony relative to the value of Clementine's equity in the machinery and improvements made to the homestead in light of the $106,000 debt charged to Edgar, and to consider that Clementine's eyesight may prevent her from acquiring any income from her labor in light of her training, education, and experience. It is possible that the latter may justify either additional alimony or an award of additional property. A more complete determination of the value of the respective mineral interests would also be appropriate. This will undoubtedly require receipt of additional testimony.

For the reasons stated herein, the judgment is reversed and the case is remanded.

SAND, PAULSON and VANDE WALLE, JJ., concur.

PEDERSON, Justice, concurring specially.

This case illustrates that which can occur when Rule 52(a), N.D.R.Civ.P., is given less than complete application, first in the trial court and then in this court. Unless the trial judge and all trial counsel have a clear understanding of the fact issues to be tried before trial starts, it is quite likely that the introduction of testimony to support a necessary finding will be overlooked.

When no evidence is introduced by the lawyers to support a necessary finding of fact, what in the world is the trial judge to do? Naturally, he cannot make that necessary finding. Then when the case is before this court and a required finding is missing and there is no evidence to support the finding, we cannot remand for the making of an appropriate finding of fact pursuant to Rule 35, N.D.R.App.P., as we recently did in *Martin v. Martin*, 304 N.W.2d 697 (N.D. 1981).

Under these circumstances, because we are seeking justice for the parties, we are forced into a further dilution of Rule 52(a), which I think the majority opinion does here, by making it appear that the trial judge must have erroneously excluded evidence and, accordingly, the matter must be remanded for a further evidentiary hearing.