**Mary A. URLAUB, Plaintiff and Appellant,**

v.

**Donald J. URLAUB, Defendant and Appellee.**

Civ. No. 10198.

Supreme Court of North Dakota.

Oct. 20, 1982.

Shirley A. Dvorak, of Mack, Moosbrugger, Ohlsen & Dvorak, Grand Forks, for plaintiff and appellant.

Neil W. Fleming, Cavalier, for defendant and appellee.

VANDE WALLE, Justice.

Mary Urlaub appeals from a judgment awarding her a divorce from Donald Urlaub, awarding her custody of the minor children, child support, and alimony, and dividing the marital property of the parties. We reverse that portion of the judgment relating to the division of property and payment of alimony and remand to the trial court for further proceedings.

At the time of trial Mary was 40 and Donald was 42 years of age. They had been married for 19 years. Three children, still minors, were born to the couple. Mary has had no special training and worked outside of the home on a part-time basis only. Donald farms in a partnership with his brother. The trial court awarded the farm property, which it found to be valued at $80,000, to Donald and required that he assume all encumbrances thereon. It awarded the home, which it found to be valued at $12,000, to Mary and required Donald to assume all encumbrances thereon. It awarded certain personal property to Mary and guns and sporting equipment to Donald. It further awarded to Donald all the farm implements, tools, appliances, and equipment. Mary was granted a divorce from Donald as the result of irreconcilable differences and she was awarded custody of the minor children. The trial court required Donald to pay $125 per month per child to Mary for child support until each child reaches his or her majority. In addition, the trial court required Donald to pay Mary $200 per month for alimony until her death or remarriage, whichever occurs first, but provided that when the youngest child reaches her majority the alimony payments should increase to $400 per month.

Mary raises two primary issues in her appeal. In the first issue she argues that once the trial court found that Donald intentionally gave false testimony on a material issue of fact the court should not have given credence to his further testimony on other contested matters. At issue at the trial was whether or not Donald threatened Mary with a gun. Mary testified that Donald had threatened her and that she was in fear for her life and as a result was forced to take the children and leave the couple's home. Donald testified that he did not threaten Mary. The trial court, in its memorandum opinion, which was incorporated as part of the findings of fact and conclusions of law, stated:

> "They [Donald and Mary] lived together until September of 1980 at which time they separated over an incident in which he, after drinking, threatened her with a loaded gun. He gives an unconvincing denial of this."

Mary points to the testimony given by Donald that the parties' home was worth $12,000, whereas she testified that it was worth $10,000, and urges that the trial court erred because it should have either disregarded or discredited Donald's testimony as a matter of law, or the court abused its discretion in continuing to find Donald a credible witness. Other disagreements as to the value of property also appear in the record. In support of her position Mary points to a common-law maxim, *falsus in uno, falsus in omnibus,* i.e., false in one thing, false in everything. See Black's Law Dictionary, Fifth Edition, 1979. She notes four approaches taken by other jurisdictions to testimony in a situation in which a witness was determined to have given false testimony on a material matter:

1. The trier of fact is *required* to reject all of the remainder of the witness's testimony, citing *A–1 Employment Service v. Jastram,* 119 So.2d 527 (La.Ct.App.1960);

2. The trier of fact *may* reject the remainder of the witness's testimony, citing *Detroit Edison Company v. Zoner*, 12 Mich. App. 612, 163 N.W.2d 496 (1968);

3. The trier of fact *must* reject all of the testimony unless that testimony is strongly corroborated by other evidence, citing *Parkel v. Union Pac. Coal Co.*, 69 Wyo. 122, 237 P.2d 634 (1951); and

4. Once the testimony is found to be false, the remainder of the witness's testimony *may* be rejected unless corroborated, citing *Nehls v. Nehls*, 21 Wis.2d 231, 124 N.W.2d 18 (1963).

■ Mary urges that we adopt the third approach, i.e., requiring that the testimony must be rejected unless the testimony is strongly corroborated by other evidence. She notes that in several instances Donald testified as to the value of property and that his testimony was either contradicted directly or was not supported by corroborating evidence.

We are not here concerned with a proposed instruction to the jury to which objection was taken.[1] The trial judge was the trier of fact, and, as a corollary, the judge of the credibility of the witnesses. The trial judge is uniquely qualified to determine the credibility of a witness with regard to the truthfulness of the various facts to which the witness testified. The trial judge, like a jury, has the opportunity to observe the demeanor of the witness and all of the other matters which are taken into consideration in determining the credibility of a witness. Unlike most jurors, the trial judge is learned in the law and is aware of the various factors which need to be taken into consideration. We need only determine whether or not the findings of the trial court are clearly erroneous under the standard set forth in Rule 52(a), N.D.R. Civ.P. We see no reason to encumber the trial judge with various rules announced by this court concerning the credibility of a witness.

Mary's second issue is that the trial court erred when it failed to make findings of fact as to the net worth of the marital estate and awarded her alimony terminable upon her remarriage. The trial court found that the farmland has a value of $80,000. It required Donald to assume all encumbrances thereon, although no value of the amount of encumbrances was found. The trial court found the home to have a value of $12,000 and required Donald to assume all encumbrances thereon, although no value of the amount of the encumbrances was found. With regard to the value of the partnership, the trial court stated:

"The distribution of this property and other monetary determinations contemplates that Donald has received the income producing property (*i.e.*, farmland and partnership assets). The value of the partnership with his brother is not easily determined. Whether the net worth is negative (as claimed by Donald) or substantial (as claimed by Mary) is not related to the reality of the present situation. Mathematical figures alone cannot tell this story. There is a confusing array of figures on the personal and farming worth of these people. The partnership is by no means flush with assets over liabilities or is it in such dire straits. What is

---

1. Insofar as jury instructions are concerned, this court has held that:

"It is error for a court to instruct the jury that, if they believe that a witness has testified falsely as to any material fact in the case, they have a right to wholly disregard his testimony, except so far as it is corroborated by other credible evidence in the case, either positive or circumstantial. They should be told that this is the rule only in cases where the witness has willfully or knowingly or intentionally testified falsely." See *McPherrin v. Jones*, 5 N.D. 261, 65 N.W. 685 (1895), Syllabus by the Court ¶ 1.

NDJI 1001 on impeachment of witnesses reads, in part:

"If you conclude that a witness has knowingly testified falsely concerning any matter, you have a right to distrust such witness's testimony in other particulars. You may reject all the testimony of that witness, or give it such weight and credibility as you think it deserves."

One of the sources listed as authority for the instruction is *McPherrin v. Jones, supra*. North Dakota Jury Instructions are suggested instructions only. *State v. Jacob*, 222 N.W.2d 586 (N.D.1974).

most significant is that it has been since 1966 an ongoing operation with tangible property that has provided two families with a comfortable living through monthly payments. There is reason to believe that the entire operation will generate sufficient net income in the future to provide adequately for the needs of both Donald and Mary. The partnership has shown a substantial paper profit in 1978 ($66,000), a small profit in 1979 ($6,500) and a loss in 1980 (–$25,000). Whatever has happened on the tax returns has apparently done nothing to change their lifestyle—a not uncommon situation with farming. The partnership farms 1347 acres, has a full line of machinery and a hog operation and is capable of generating monthly income to satisfy the personal needs of two families. This is not to say that the standard of living of Donald and Mary will not suffer as a result of this divorce." [Footnote omitted.]

■■ The trial court in its memorandum opinion also indicated its awareness of our previous holdings concerning the duty of the court to make an equitable distribution of property. We have held that there exist no set rules a trial court must follow in arriving at this distribution. *Williams v. Williams,* 302 N.W.2d 754 (N.D.1981). Certain guidelines are established by Section 14–05–24, N.D.C.C., and further guidelines have been announced in *Ruff v. Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952), and *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966). These guidelines allow a trial court to consider the respective ages of the parties to the marriage; their earning abilities; the duration of the marriage and the conduct of each during the marriage; their station in life; the circumstances and necessities of each; their health and physical condition; their financial circumstances as shown by the property owned at the time; its value and its income-producing capacity, if any, and whether it was accumulated or acquired before or after the marriage; and such other matters as may be material. *Williams, supra.* We have stated that the trial court's determinations as to the equitable distribution of property and the award

of spousal support are treated as findings of fact and we will not reverse them unless they are clearly erroneous. *Williams, supra.* However, before we can determine whether or not the distribution of property and the award of alimony are clearly erroneous, we must understand the trial court's rationale for its decision. In *Hoge v. Hoge,* 281 N.W.2d 557, 561 (N.D.1979), we stated:

"Where sufficient evidence has been admitted from which the court can determine the net worth of the parties' real and personal property, and the court fails to do so, a manifest abuse of discretion exists. When there is evidence upon which the court can arrive at an equitable property division, justice requires use of the elementary accounting equation of assets minus liabilities equals total equity. From this equation it is possible to determine the net worth of the marital property. See *Nastrom v. Nastrom,* 262 N.W.2d at 491, *supra.*"

In *Nastrom v. Nastrom,* 262 N.W.2d 487, 591 (N.D.1978), this court stated:

"In this case, where much of the property is difficult to value, where there is a conflict in the evidence as to the value of some properties, where the only evidence as to the worth of other properties is a veiled hint that they are worthless because they are heavily financed, and where the evidence of the value of one property, . . . is widely divergent . . . we are provided with no sufficient basis for computing the property's value by any method other than guesswork."

■ In a second *Nastrom* decision, *Nastrom v. Nastrom,* 284 N.W.2d 576 (N.D. 1979), we held that the district court need not itemize the individual items making up the net worth of the parties, but in that instance the trial court did apply the accounting equation of assets minus liabilities equals total equity in determining the parties' net worth. Here, despite the appointment by the trial court of two expert appraisers, one to appraise the machinery owned by the Urlaub brothers' partnership and the other to appraise the real estate

owned by Donald and the hog barns owned by the partnership, there is no finding of net worth.

Additionally, we cannot determine if the amount of alimony awarded Mary is in the nature of spousal support or if it is a type of property division. In *Eberhart v. Eberhart,* 301 N.W.2d 137 (N.D.1981), this court recognized that "alimony" payments are sometimes intended as spousal support and in other instances are a type of property division. We have said that to avoid confusion as to the nature of an award of "alimony," the term "spousal support" is more descriptive than the term "alimony" and should be given preference. *Jochim v. Jochim,* 306 N.W.2d 196 (N.D.1981). Here, we are unsure as to the nature of the award made to Mary. If the payments are a type of property division, it is improper for the court to order that they be terminated upon Mary's remarriage. See *Nastrom v. Nastrom,* 262 N.W.2d 487 (N.D.1978). Because the trial court directed that the payments cease upon Mary's remarriage or death, it may appear that the payments are in the nature of spousal support rather than a type of property division. But if the payments are in the nature of spousal support, Mary has been left with no property except the house and personal effects and Donald has received all of the other property. We cannot determine whether or not that division is clearly erroneous because we are unaware of the net worth of the parties.[2] In a similar case, *Williams v. Williams, supra,* 302 N.W.2d at 759–760, we stated:

> "In the case before us both parties submitted evidence of the net worth of the marital property. There was a wide discrepancy between what [the wife] contended was the net worth of the couple's property and the figures [the husband]

offered to prove its net worth. Yet there was no determination made by the court as to the net worth of the couple's property and therefore the record reflects no foundation which the court could use to make an equitable distribution of the property. We believe the distribution of property made by the trial court was clearly erroneous because it is not possible to make an equitable distribution of anything until a determination has been made as to what it is that is being distributed."

We believe the same rationale applies in this instance. As in *Williams,* we must remand for the purpose of determining the value of the real and personal property owned by the parties and for a redetermination of the matters relating to an equitable division of the property.

The judgment of the trial court is affirmed with respect to the decree of divorce and the award of custody and child support. That portion of the judgment concerned with distribution of property and the award of alimony is reversed and the case is remanded for further proceedings consistent with this opinion. Mary is awarded costs on appeal.

ERICKSTAD, C.J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

2. The quotation from the trial court's memorandum opinion implies a position that it is better to retain the Urlaub partnership in operation in order that sufficient income to provide adequately for the needs of both Donald and Mary will be generated. As indicated in our footnote 3 to *Williams v. Williams,* 302 N.W.2d 754, 760 (N.D.1981), our holding there, as here, is not intended to carry with it the implication that, as a matter of law, the operation must be

liquidated in order to achieve an equitable distribution of the property. We agree with the rationale that courts should avoid a division of property which will destroy or damage the ability of one of the parties to earn a livelihood, or which will destroy the value of property. See *Koubek v. Koubek,* 212 Neb. 2, 321 N.W.2d 55 (1982). See also *Webber v. Webber,* 308 N.W.2d 548 (N.D.1981).