**Darlene GRAVES, Plaintiff and Appellee,**

v.

**Leonard GRAVES, Defendant and Appellant.**

**Civ. No. 10452.**

Supreme Court of North Dakota.

Nov. 30, 1983.

27–17–03, NDCC.

Georgia M. Pope, Jamestown, for plaintiff and appellee.

James R. Jungroth, of Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for defendant and appellant.

VANDE WALLE, Justice.

Darlene Graves sought and was granted a divorce from Leonard Graves. Leonard Graves appealed from the judgment of the district court of Stutsman County, contending that the trial court's distribution of property is clearly erroneous. We reverse in part and remand for further proceedings.

Darlene and Leonard were married on July 3, 1962. At the time of the marriage neither party owned any real property or significant personal property. During the marriage Darin, Tracie, and Mitchell were born; Leonard adopted Lisa, a child born to Darlene by a previous marriage. At the time of the trial Darin and Tracie were minors, Darlene was 43 years of age, and Leonard was 42 years of age.

In 1970 Darlene and Leonard purchased from Darlene's mother a business known as the Commodity Warehouse in Jamestown, North Dakota. They paid her $40,000 at the rate of $300 per month, with no interest. Before they purchased the Commodity

Warehouse, Darlene worked with her parents in the Commodity and Leonard worked in a floor-covering business, earning approximately $7,000 annually. Darlene typed orders and was in charge of issuing payroll checks; she also worked in a Government office. Darlene quit her job with the Government when she became pregnant and stopped working at the Warehouse in 1972, when, according to Darlene, Leonard told her that he no longer needed her assistance. Darlene was primarily responsible for raising the children and maintaining the household. Leonard managed the business, which has thrived under his control. Darlene presently works in her sister's ceramic shop, earning $350 to $400 per month.

The warehouses are on leased sites and stand on the right-of-way of a railroad. A contract with the State for distribution of Government commodities forms the basis of the business. The contract specifies that either Leonard or the State may cancel the contract after 30 days' notice. Since purchasing the Warehouse, Leonard has increased the space for warehousing, purchased new equipment, and hired more employees. The business grosses more than $100,000 and has provided Darlene and Leonard with a net income of about $40,000 annually for the past three years. Darlene and Leonard also purchased two houses during their marriage. The first one they sold at a profit of $10,000; the second home, presently occupied by Darlene and daughter Tracie, is worth about $70,000, with about $8,500 still to be paid.

The trial court granted the decree of divorce to Darlene on the ground of irreconcilable differences. In its memorandum opinion the trial court stated that the parties contributed equally to the breakdown of the marriage. There was testimony that Leonard had a problem with gambling, that Darlene had a problem with alcohol, and that each party had physically abused the other. The trial court, without contest, awarded custody of Tracie to Darlene and custody of Darin to "his sister in Valley City, ..." The court ordered Leonard to pay Darlene $200 a month for her care of Tracie and to pay Darin's sister $100 a

month for her care of Darin. The court also ordered Darlene to pay Darin's sister $100 a month. The child-support payments were to continue until each child reached 18 years of age. The court also required Leonard to provide medical insurance for Darin and Tracie. In addition, the parties were to pay their own attorney fees.

The court ordered that Darlene and Tracie could continue to occupy the house and that Darlene would be responsible for paying the living expenses related to residing in the house; Darlene and Leonard each would be responsible for one-half the real estate taxes, of the house insurance and maintenance costs, and of the $240 monthly house payment. The trial court directed that if Darlene were to remarry, she could continue to reside in the house if she paid Leonard 50 percent of the market value of the house and that if she were to move, the house would be sold and the proceeds divided equally between Leonard and her. Each party was awarded the vehicle and personal property in his or her possession.

The trial court provided that Darlene and Leonard each should have a one-half interest in the Commodity Warehouse. The court stated that Leonard was to receive $1,000 a month from the net profits as compensation for managing the business and that each party would divide equally the remaining profits. As manager Leonard was to consult Darlene about expenditures that were not in the ordinary course of business. If they could not agree, each would select an arbitrator and the two selected arbitrators would name a third arbitrator.

On appeal Leonard challenges that portion of the judgment concerning the Commodity Warehouse. He contends that the trial court's method of distribution is clearly erroneous because it requires compulsory arbitration, which according to Leonard, is unlawful; because it fails to provide for any future increase in compensation; and because it invites possible litigation with respect to partitioning the property or liquidating the partnership. Both Leonard and Darlene ask this court to remand the case

to the trial court because the present distribution with respect to the Warehouse is unworkable.

■ Section 14–05–24, N.D.C.C., requires a trial court to distribute the parties' property "as may seem just and proper." *Winter v. Winter,* 338 N.W.2d 819 (N.D. 1983). The ultimate objective is to make an equitable division. *Fraase v. Fraase,* 315 N.W.2d 271 (N.D.1982); *Nastrom v. Nastrom,* 284 N.W.2d 576 (N.D.1979). An equitable distribution is not necessarily an equal distribution. *Williams v. Williams,* 302 N.W.2d 754 (N.D.1981); *Carr v. Carr,* 300 N.W.2d 40 (N.D.1980). There are no set rules for distribution because what is equitable depends upon the circumstances in a particular case. *Tuff v. Tuff,* 333 N.W.2d 421 (N.D.1983); *Clark v. Clark,* 331 N.W.2d 277 (N.D.1983). A trial court's findings of fact will not be set aside unless they are clearly erroneous, which means that this court is left with a definite and firm conviction that a mistake has been made. Rule 52(a), N.D.R.Civ.P.; *Winter v. Winter, supra; Clark v. Clark, supra.*

■ To determine whether or not the property distribution is clearly erroneous, we need to understand the trial court's rationale for its decision. *Urlaub v. Urlaub,* 325 N.W.2d 234 (N.D.1982). In order to make an equitable distribution, a trial court must first determine the net value of the property owned by the parties. *VanRosendale v. VanRosendale,* 333 N.W.2d 790 (N.D. 1983); *Urlaub v. Urlaub, supra; Williams v. Williams, supra; Nastrom v. Nastrom,* 262 N.W.2d 487 (N.D.1978), 276 N.W.2d 130 (N.D.1979), and 284 N.W.2d 576 (N.D.1979). The trial court must find the net value of the property *before* employing the guidelines for distribution established in *Ruff v.*

*Ruff,* 78 N.D. 775, 52 N.W.2d 107 (1952), and in *Fischer v. Fischer,* 139 N.W.2d 845 (N.D.1966). *Williams v. Williams, supra.*

■ Although the trial court does not need to make an express finding as to each of the *Ruff-Fischer* guidelines [*Nastrom v. Nastrom,* 284 N.W.2d 576 (N.D.1979)], it must "find the facts specially" in order to enable this court to understand the basis of the trial court's conclusions of law. *Williams v. Williams,* 302 N.W.2d at 759. In the present case the trial court attempted to distribute the property without determining the net value of the property. In its memorandum opinion the trial court determined the value of the house, vehicles, and other personal property,[1] but it failed to ascertain the value of the Commodity Warehouse business. Although the trial court stated that the property is difficult to evaluate because of the precarious nature of the contract with the Government, it nevertheless should have determined the value of the Commodity Warehouse, including the equipment used in the business.[2] In *Fraase v. Fraase, supra,* the trial court determined the value of the husband's law practice even though a law practice also is a mixture of tangible and intangible assets. See *Nastrom v. Nastrom,* 262 N.W.2d 487 (N.D.1978).

■ The trial court also should have specified the rationale for its distribution. *Tuff v. Tuff, supra.* Even though a trial court need not explicitly mention the *Ruff-Fischer* guidelines, this court on review must nevertheless be able to discern the basis of distribution by deduction or reasonable inference. *Winter v. Winter, supra.* In awarding a one-half interest in the Commodity Warehouse to Darlene, the trial court did not indicate whether this award

1. Even though the trial court determined the value of various items of personal property, in its memorandum opinion it expressed dissatisfaction with the form of information the parties supplied the court: The parties failed to provide current information about their assets and liabilities and to specify the value of individual items of personal property. The parties also did not comply with Rule 8.3, N.D.R.O.C., which requires each party in a contested divorce case to assign value to the property possessed by the parties.

2. The trial court heard testimony about the equity acquired by paying the loans on the equipment and about the lack of a favorable market for selling the Commodity Warehouse. The court also had information about the outstanding business debt. Even though the record provides this court with some information, the trial court's findings of fact must nevertheless include the net value of the property in order to make an equitable distribution. *Williams v. Williams,* 302 N.W.2d 754 (N.D.1981).

was in the nature of a property settlement or spousal support. Neither the memorandum opinion nor the findings of fact and conclusions of law specifies that the trial court awarded or denied spousal support. This court has often recognized the problem of characterizing an award as either a part of a property settlement or as spousal support. See, e.g., *Coulter v. Coulter,* 328 N.W.2d 232 (N.D.1982); *Urlaub v. Urlaub, supra; Briese v. Briese,* 325 N.W.2d 245 (N.D.1982); *Eberhart v. Eberhart,* 301 N.W.2d 137 (N.D.1981); *Williams v. Williams, supra.* See also O'Kelly, "Three Concepts of Alimony in North Dakota," 1 *Faculty Journal, U.N.D. School of Law* 69, 72–84 (1982).

 In addition, both parties maintain that their acrimony makes unworkable the trial court's disposition of the Commodity Warehouse. We agree.

Darlene contends that the trial court should not alter its distribution of other property. Even though a trial court on remand usually should evaluate independently the equitableness of an award of spousal support and the distribution of real and personal property, circumstances sometimes require the trial court to evaluate the overall equitableness of its earlier judgment. *Webber v. Webber,* 308 N.W.2d 548 (N.D.1981). See also *Nastrom,* 262 N.W.2d 487 (N.D.1978). In *Webber v. Webber* we stated that any modification with respect to the award of a military pension would likely require a review of all provisions relating to the division of property and spousal support. Similar circumstances are present in this case.[3]

We therefore reverse that portion of the trial court's judgment concerning the distribution of property and remand this case for a new trial to determine the value of the personal property owned by the parties and for a redetermination of the matters relating to an equitable division of property.[4] Costs on appeal are not awarded to either party.

ERICKSTAD, C.J., SAND and PEDERSON, JJ., and H.F. GIERKE, III, District Judge, concur.

---

3. This court is not necessarily indicating that the trial court should liquidate the property; we have previously recognized the importance of maintaining income-producing property. See, e.g., *Urlaub v. Urlaub,* 325 N.W.2d 234 (N.D.1982); *Gooselaw v. Gooselaw,* 320 N.W.2d 490 (N.D.1982); *Williams v. Williams, supra.*

4. It will not be necessary for this court to assign a different judge to hear the matter on remand. The presiding judge of the district will make the assignment pursuant to AR 2–1981. We are aware that the trial judge who heard this matter has retired.